STATE, Respondent, v. PERKINS, Appellant.

(156 N. W. 73.)

(File No. 3585.   Opinion filed February 1, 1916.)

1.  **Criminal Law—Change of Venue, Right to—Local Prejudice—
    Public Excitement, as Cause.**

    Defendant, charged with aiding in receiving bank deposits
    into a state bank, of which he was an officer, knowing the
    bank to be insolvent, moved for change of venue. The evi-
    dence showed that the county, a county seat town, and a large
    number of local, municipal and civic organizations in the coun-
    ty, as well as many hundred individuals resident therein, were
    depositors in the bank, that hard times came on, causing hard-
    ship and suffering and giving rise to much bitter, inflammatory
    talk and denunciation against defendant by depositors and
    others; that the bank failure became a local political issue;
    that a candidate for Governor had at a local meeting severely
    denounced the bank officers, followed by the almost immediate
    assassination, by a depositor, of the bank cashier, and the
    suicide of the slayer; and that many local newspaper articles
    condemned the bank officials. **Held,** that the trial court erred
    in refusing to grant defendant's motion for a change of venue
    to another county, for local public excitement, bias and pre-
    judice; that it was impossible for the inflamed state of the

public mind, appearing from the showing made, to have died out or subsided so as to afford defendant a fair and impartial trial by a jury of said county.

2.  **Same—Change of Venue—Grounds—Aroused Public Sentiment.**
    When public sentiment of a county is strongly aroused against a defendant, its effect is to prevent a calm and dispassionate inquiry into the merits of the controversy, and defendant is entitled to a change of venue.

    Polley, P. J., not sitting.

Appeal from Circuit Court, Meade County. Hon. WILLIAM G. RICE, Judge.

The defendant, Henry E. Perkins, was convicted of aiding and abetting in receiving bank deposits into the Meade County Bank of Sturgis, of which he was an officer, knowing it to be insolvent, and he appeals. Reversed and remanded.

*Harry P. Atwater,* and *Gaffy & Stephens,* for Appellant.

*Clarence C. Caldwell,* Attorney General, and *Byron S. Payne,* Assistant Attorney General, for the State.

(2) To point two of the opinion, Appellant cited: State v. Billings, (Iowa) 42 N. W. 457; Richmond v. State, (Neb.) 20 N. W. 282; People v. Suesser, 14 Crim. Rep. 224; 132 Cal. 631, 64 Pac. 1695; Gallagher v. State, 50 S. W. 388.

Respondent cited: 12 Cyc. 244, 2; People v. Walker, 179 Ill. A. 455.

PER CURIAM. [1, 2] Appellant was convicted, in the circuit court of Meade county, of having aided and abetted in receiving bank deposits into the Meade County Bank of Sturgis, of which defendant was then an officer, then and there knowing said bank to be insolvent. Before the trial of the cause appellant moved the court for a change of the place of trial to some other county, for the reason that a fair and impartial trial could not be had in Meade county by reason of public excitement, bias, and prejudice existing therein. There were many affidavits submitted both for and against this motion. From the showing made it clearly appears that the Meade County Bank, located at Sturgis, closed its doors on December 26, 1911; that the total number of depositors of said bank was about 1,300, about 800 of whom were residents of Meade county scattered widely throughout said county; that the county of Meade had $13,000 on deposit in said bank at the time of said failure; that the city of Sturgis, the county

. seat of said county, had $3,000 on deposit in said bank at said time; that four fire companies of Sturgis, eleven school districts of said county, seven or more fraternal insurance lodges, and different church societies all had funds deposited in said bank; that the dry climatic conditions for the two years preceding the suspension of said bank caused hard times, and, in connection with the failure of said bank, caused much hardship and suffering, and gave rise to a great deal of bitter, inflammatory talk and denunciation against defendant by the depositors of said bank and other citizens of said county; that the failure of said bank entered into the political issues in said Meade county during the political campaign of 1912; that about April 20, 1912, a candidate for Governor delivered a speech at Sturgis in which he arraigned and denounced the officers of said bank and stated that they ought to be in the penitentiary; that within an hour after the closing of said political speech one of the hearers thereof and a depositor who had suffered loss by reason of the failure of said bank assassinated the cashier of said bank and then committed suicide; that throughout the campaign preceding the general November election the question of the failure of said bank and the punishment of the officers and directors thereof was discussed as a political issue in said county; one set of candidates maintaining that their election meant the sending of said bank officers to the penitentiary. During the time between the failure of said bank and the trial of defendant many newspaper articles were published and circulated throughout said county condemnatory of the officials of said bank. The newspapers of said county generally discussed and contained articles referring to the assassination of the cashier, some of which contained headlines as follows:

"Banker Ladd of Sturgis is Murdered. Farmer Crazed by Financial Loss Puts End to Meade County Banker."

The trial of defendant took place in June, 1913. We are of the view that it was impossible for the excited and inflamed state of the public mind, which appears from the foregoing showing, to have died out or subsided so that it was possible or probable that defendant could have a fair and impartial trial by an unbiased and unprejudiced jury in Meade county. Common human experience teaches us that it takes years for such bitter public excitement and prejudice to subside. While it must be understood

that we make no criticism of any candidate or of any newspaper or any other person's discussion and denunciation of the officials of said bank, as the same might have been justifiable under the facts, still we are of the view that all such discussions and denunciations served to keep alive the bitter feeling of prejudice against appellant existing at Sturgis and throughout said county resulting from the said bank failure. The fundamental laws of our land guarantee to all accused of crime a fair and impartial trial. An excited state of public feeling is always the most unfavorable for an investigation of the truth. Not only should the minds of the jurors be without bias and prejudice, but the minds of the jurors should be as far as possible removed from the prejudice and excitement of others. When public sentiment of a community is strongly aroused against a defendant, its effect is to prevent a calm and dispassionate inquiry into the merits of the controversy. State v. Nash, 7 Iowa, 347; State v. Crafton, 89 Iowa, 109, 56 N. W. 257; Richmond v. State, 16 Neb. 388, 20 N. W. 282; People v. Suesser, 132 Cal. 631, 64 Pac. 1095; Jamison v. People, 145 Ill. 357, 34 N. E. 486. If the loss and suffering caused by this bank failure were due to the criminal acts of the officers of said bank, then the officers of such bank, participating in such criminal acts, certainly merit punishment. If, on the other hand, this bank failure was the result of local climatic conditions, drought and crop failures, with no fault on the part of the officials of the bank, then such officials should not be held criminally liable. And, if this bank failure may have been the result of the criminal acts of some of the officials of said bank, other than this defendant, in which criminal acts this defendant took no part as an aider and abettor, certainly justice would not demand that this defendant should be made to suffer for the sins of others. These were issues the truth or falsity of which this appealing defendant had the right to have submitted to calm and dispassionate investigation before an unbiased and unprejudiced jury. From the showing made it appears that the public prejudice against defendant was not confined to any particular locality, but extended and cast its influence over the entire county. We are therefore of the view that it was prejudicial error to overrule appellant's motion for change of venue to some other county.

There are some other errors alleged by the assignments of error, but, as there exists some diversity of opinion as to what disposition should be made thereof, in view of the fact that such alleged errors may not occur on another trial, no further reference will be made therto.

The judgment and order appealed from are reversed, and the cause remanded for further procedure.

POLLEY, P. J., not sitting.