STATE, Respondent, v. MESERVEY, Appellant.

(220 N. W. 139.)

(File No. 6537.    Opinion filed June 23, 1928.)

*Johnson & Simons,* of Sioux Falls, for Appellant.

*Buell F. Jones,* Attorney General, and *Bernard Brown,* Assistant Attorney General, for the State.

BURCH, P. J. On the 30th day of April, 1926, defendant shot and instantly killed Hugh L. McNamara, sheriff of Hyde county. He was afterward tried and convicted of murder and on the 16th of June, 1926, was sentenced to life imprisonment in the state penitentiary. From the judgment and an order denying a new trial, he appeals.

The shooting occurred in Hyde county on a farm that had been the home of appellant and his family for many years. Difficulties arising from the foreclosure of a mortgage and subsequent litigation over the farm culminated in the homicide. Appellant had lost the farm through the foreclosure and it had been purchased by Quirk and by him leased to Peet. Appellant refusing to surrender possession had been removed by the sheriff under an execution in forcible entry and detainer. After service of the execution an appeal was taken and supersedeas bond furnished pending appeal, but exceptions were taken to the sureties on the bond, and, without attempting to justify the sureties, appellant returned with his wife and son to the farm, and, on the day of the homicide, was holding possession against Quirk, the purchaser, and Peet, his tenant. Quirk, and Peet with his family, came to the place on that day several hours before the sheriff, but there does not appear to have been any trouble until the sheriff came

to the premises about 5:30 or 6 o'clock in the evening, with his brother and a deputy. According to the evidence of the state, the sheriff had a warrant for the arrest of appellant. The sheriff drove up in his car to within a few feet of the steps leading onto the porch and he and his deputy got out and advanced toward the porch. Appellant and his son were on or near the porch and appellant's son was armed with a revolver in a holster strapped to his person, while near appellant there was a loaded shotgun and rifle. A conversation was had between the sheriff and appellant, lasting for a time variously estimated at from 10 minutes to half an hour, in which appellant was advised of the sheriff's mission and urged to submit peaceably. This he refused to do, and, when pressed, warned the sheriff to come no closer and turned and seized the loaded shotgun a few feet away. The sheriff jumped or ran from the porch and, as he got to the bottom of the steps, appellant fired, killing him almost instantly. Louis McNamara, the brother, then drew his gun and fired twice at appellant from the car. There were several eyewitnesses and they all agree as to the essential details. Appellant claims he shot in self-defense and that he did not shoot until after the sheriff had drawn his gun and was crouching by the porch apparently intending to shoot. Appellant was well acquainted with the sheriff, knew his mission, and, when he fired the fatal shot, was actively engaged in resisting arrest. There is evidence that earlier in the day appellant told Howard Melbourne that the Hyde county officials had ridden him long enough and that now he was going to ride and "with bloody spurs."

He seeks a reversal on the following grounds: First, that the court erred in denying him a change of venue; second, because of errors in the receipt and rejection of evidence and the misconduct of the state's attorney in offering certain exhibits and evidence on the trial; third, because of the insufficiency of the evidence to support the judgment.

Appellant moved for a change of venue on the ground that a fair and impartial trial could not be had in Hyde county by reason of the prejudice of the citizens of said county against him. This motion was made after a change of judges had been obtained upon an affidavit of prejudice. The motion for change of venue was supported by a number of affidavits. One was by

appellant's atorney to the effect that, when the affidavit of prejudice for change of judges was filed, the said judge "proceeded to lecture" affiant in the presence of most of the jury panel because he had not immediately come into court and presented the affidavit of prejudice; that in the course of his remarks the judge referred to the expense to Hyde county in keeping the jury waiting, the importance of the case, the seriousness of the crime charged, and the improper actions of affiant, whereby the jury were greatly prejudiced against appellant and could not thereafter give appellant a fair trial. The affidavit also identified and presented certain newspaper articles published in the Hyde County Bulletin and the Highmore Herald, newspapers of general circulation in the county, wherein the details of the crime were portrayed, opinions of the editors expressed, and the virtues of deceased extolled. Another affidavit alleged that deceased was elected sheriff of Hyde county by a large popular vote; that he was well known throughout the county, and his death caused a great amount of discussion which caused the people throughout the county to become excited and inflamed against appellant, and threats of mobbing were so numerous that the authorities moved appellant first to Pierre and then to Huron for protection against violence; also that deceased' had many relatives in the county who have created a sentiment against appellant, and, for that reason, it would not be possible for appellant to have a fair trial in the county. Sixteen others signed identical affidavits.

Philip Meservey, a son of appellant, who was also charged with the murder of deceased, made an affidavit to the effect that when he was arrested and brought into Highmore, the county seat, he and the officer having him in custody were surrounded by an angry crowd, and the officer, fearing for his life, took him to the Hyde county jail and shortly after to the Hughes county jail at Pierre; that later, on May 3d, when he was brought before a justice for preliminary hearing, he heard remarks (not set out) that caused him to believe that he was in danger of losing his life if he was kept in the Hyde county jail; that he was again brought to Highmore for a hearing on May 13th, and, when he asked for a continuance to get counsel, he was given 30 minutes to obtain counsel; that thereafter he was committed to the custody of the coroner of Hyde county and by him taken to the Beadle county

jail at Huron because it was unsafe for him to remain in Hyde county; that he sought to employ C. E. Noel, an attorney of Highmore, who refused to represent him in circuit court because it would be unpopular to do so. Appellant also made an affidavit of similar import and his wife made an affidavit as to the removal of appellant to the several jails heretofore mentioned. Several others signed affidavits expressing the belief that appellant could not have a fair trial in Hyde county.

The state filed counter affidavits denying that appellant could not have a fair trial in the county, and also stating the removal of appellant to Pierre was because there was no county jail in Hyde county, "merely a sort of lockup," and it had been customary to keep prisoners in Hughes county jail; that the removal later to the jail at Huron was because of sanitary conditions and that neither the removal of appellant to Pierre or to Huron was because of fear of mob violence against either defendant; that there were no relatives of deceased in Hyde county, except three brothers, one sister, and a father, and that all of them had maintained a "dignified silence in order that the accused might have a fair and impartial trial"; that, when accused and his son were brought to Highmore (which was the home of deceased and all his relatives), they were taken to a restaurant for supper about 8:45 in the evening; that the persons having them in custody were unarmed; and that, while there was a crowd on the street apparently attracted by curiosity and a desire to hear the details, they were not excited, made no threats of violence and offered none. The state made a very strong counter showing, going into detail, and produced the affidavits of several who had been about the county in many places, to the effect that there was no excitement and no apparent prejudice against accused and gave in detail the place of residence of each of the affiants making affidavits for accused, showing that they were nearly all immediate neighbors of accused in the extreme northwest corner of the county and could not know the general sentiment of the county.

It will not be necessary to further detail the facts set out in the affidavits on either side. The case was tried in Hyde county and no complaint is made that a fair jury was not obtained. No exception is taken to any ruling of the court in selecting the jury and no showing that the voir dire examination disclosed any bias

or prejudice. Nor does it appear that appellant exhausted his peremptory challenges or in any manner had difficulty in securing a jury satisfactory to him. He does not now complain that the jury was not fair and impartial or that there was any hostility shown by any one, or any influence or demonstration (with one exception) that could or did affect the jury. The exception appears in assignment No. 11, wherein it appears that appellant's counsel addressed the court as follows:

"May we ask the court to keep the audience from making any demonstration?"

—to which the court replied:

"This is the first time they have made any demonstration. Now, I don't want any more demonstration by the audience."

When the demonstration occurred or what it consisted of does not appear.

We do not deem it necessary to review the cases cited in reference to the rule governing a change of venue. We recognize the right of appellant to a fair trial; that an excited state of public feeling is always the most unfavorable for an investigation of the truth and that not only should the minds of the jurors be without bias and prejudice, but the minds of the jurors should be, as far as possible, removed from the prejudice and excitement of others, as announced by this court in State v. Perkins, 36 S. D. 579, 156 N. W. 73. In allowing or refusing a change of venue the court must be governed by a sound judicial discretion and the material issue is whether there is in fact a prejudice in the minds of the inhabitants of the county sufficient to raise a reasonable apprehension that the accused will not receive a fair and impartial trial in the county. People v. Pfanschmidt, 262 Ill. 411, 104 N. E. 804, Ann. Cas. 1915A, 1171. In the case at bar, there is no ground for apprehension that the accused did not have a fair trial in the county. There was nothing in the conduct of the people to indicate either excitement or prejudice, and, beyond the fact that deceased was a popular sheriff of the county, nothing to indicate that the people would desire other than a fair trial and punishment of the accused, if guilty. In view of the entire record, subsequent events, and the character of appellant's defense, there is nothing to indicate he did not receive a fair trial, or that he could have been prejudiced by a denial of his motion.

There is no merit to the contention of appellant that the evidence is insufficient to support the judgment. The facts above set out amply sustain the verdict, if believed by the jury. There was practically no conflict. Appellant's own testimony, which is all that he introduced, admits most of the facts and differs in no essential, except that he claims the sheriff had drawn or was about to draw his gun, but he does not claim that he was thus threatened until after he had rushed to arms.

Appellant's son stood on guard armed with a .45 caliber revolver during the altercation and the state's attorney proved this in connection with the other circumstances and facts surrounding the tragedy and offered the son's revolver in evidence. This is claimed to have been misconduct on the part of the state's attorney. The revolver was excluded from evidence, but the position and attitude of the son were admitted. There was no misconduct in thus proving the facts. They were a part of the surroundings, and the setting in which the crime was committed.

We have carefully examined the evidence with the objections and rulings of the court and find none of sufficient importance to warrant a discussion. We notice no error, and, certainly, none that would warrant a reversal as prejudicial. We are satisfied that appellant had a fair and impartial trial and that the judgment is amply sustained by the evidence.

The judgment and order appealed from are affirmed.

POLLEY, SHERWOOD, CAMPBELL, and BROWN, JJ., concur.