STATE OF SOUTH DAKOTA, Respondent, v. DEMERLY, et al, Appellants.

(227 N. W. 463.)

(File No. 6429. Opinion filed November 19, 1929.)

Robert C. Hayes and John T. Heffron, both of Deadwood, for Appellant.

Buell F. Jones, Attorney General, and H. A. Linstrom, Assistant Attorney General, for the State.

BURCH, J. Defendant was convicted of arson in the first degree and appeals to this court from a judgment sentencing him to imprisonment in the penitentiary for a term of 15 years and from an order overruling a new trial.

The errors assigned will be best understood if the facts are stated in chronological order with the background surrounding the case. The scene of the alleged crime is in the ranch country of Eastern Butte county. Defendant and most of the witnesses for the state are ranchmen. At the time of the alleged offense defendant owned about 5,000 acres of land on which were situated two sets of ranch buildings, one set was known as the Sulphur ranch buildings and the other as the Trail Creek ranch buildings. On the morning of the 26th of May, 1923, about 2 o'clock a. m., the dwelling house on the Trail Creek ranch was burned together with the contents of the building, except a few small articles of furniture which were removed by those present. At the time of the fire the house was occupied by four men, namely, Earl Kirk, Paul Smith, Orion Mutchler, and Ed Maguire. Kirk and Maguire were employees of defendant, working at what they termed lambing-out. Smith was employed as cook. Mutchler's purpose in

being at the house will later appear. Kirk and Smith slept together and were asleep until aroused by Mutchler, who notified them the house was afire. Maguire and Mutchler also claim to have retired and fallen asleep, and Mutchler says he was awakened by the fire and called the others. Defendant at that time was at a hotel in Newell, about 35 miles distant. He did not get back to the ranch until the next morning after the fire. The contents of the building were insured for $650 and the building for $1,500. Defendant collected the full amount of the insurance. The insurance adjustor made some investigation and required additional proof of the value of the personal property, and Orion Mutchler furnished a statement to the adjustor saying that the property was worth more than the amount for which it was insured. It also appears in an indirect way from questions propounded that the fire marshal investigated the fire shortly after its occurrence, but there is no evidence that either the adjustor or the fire marshal discovered anything to cause either to suspect the fire was of incendiary origin.

In January, 1925, nearly two years after the fire, defendant's wife obtained a divorce, and most of the witnesses for the state in this case were witnesses against the defendant in the divorce case. It is quite evident from the record that the principal witnesses for the state took sides against the defendant in the divorce action and that they are hostile to defendant. The principal witnesses frankly admit their hostility and their desire to convict defendant in this case. It appears that before the trial there had been at least two fires, one in which eight saddles used in the round-up conducted by the defendant were burned, and the horses used by the riders scattered. Another was the burning of a haystack belonging to one Leslie Boe. The hostile state's witnesses ascribe their hostility to defendant to a belief on their part that he was a dangerous man and by implication at least seem to suspect defendant of being connected with the fires. It would hardly seem, however, that there could be any justification in connecting him with the burning of the saddles. After the divorce action and the apparent feud between Mutchler and some of the other principal witnesses for the state and about two years after the fire, Mutchler says that he concluded he ought to turn state's evidence, and as far as we can gather from the record, although the actual

circumstances are a trifle vague, it appears that Mutchler went to the state's attorney and informed him that the burning of the Trail Creek ranch building was incendiary; that defendant wanted the building burned in order to collect the insurance; and that he asked Mutcheler to assist Josh Guffey in setting fire to the building, the plan being that defendant would go to Newell, register at a hotel, and stay there over night to establish for himself an alibi; that Josh Guffey, living some 25 or 30 miles distant from the Trail Creek ranch, should ride over and set fire to the building; that Guffey fearing that his horse might get away while he was engaged in setting the fire, leaving him afoot in that neighborhood, wanted some one to ride with him and hold the horse while he set the fire; that Orion Mutchler was unwilling to do this, but was willing that his brother Walter should do so; and that arrangements were made whereby Walter Mutchler would serve in that capacity while Orion Mutchler agreed to go to the house and stay with the laborers and arouse them when the fire was well under way. This plan he says was carried out. Walter Mutcheler corroborates his brother in most of the essential details. The arrest of defendant and Guffey was caused but they were allowed separate trials. In the case at bar both defendant and Guffey denied the accusation against them and denied that either had anything to do with setting of the fire if it was in fact set. It does not appear that either of the Mutchler brothers have been held to answer for their part in the crime which they declare was committed. Before the trial defendant filed an affidavit of prejudice against Judge McNenny, and Judge Miser was called in to try the case. A motion for change of venue was made and supported by a great many affidavits and opposed by a very large nummber of affidavits on the part of the state. The application for change of venue was denied and that is assigned as one of the errors. A challenge to the jury panel was made by defendant but overruled, which is assigned as error. Other errors assigned pertain to the admission of evidence, to the instructions of the court, and to the sufficiency of the evidence to support the verdict. The case seems to have been vigorously prosecuted and vigorously defended by able counsel on both sides. After the conviction the trial court sentenced defendant to the penitentiary for a term of 15 years. The corroboration of the testimony of the accomplices is very meager.

There is evidence that appellant made inquiry of a neighbor, who had collected insurance on property burned, concerning the details of making proof and whether or not the insurance company paid his claim in full and without objection. This inquiry was made about a year before the fire in this case. There is also evidence that appellant told Gabe Johnson that he was going to burn this building and collect the insurance. Johnson admits his enmity to appellant at the time of the trial. It does not appear when the enmity arose or the cause, except that the record indirectly reflects the cause as originating in the divorce proceedings in which Johnson appears to have been accused of causing the trouble between appellant and his wife. Appellant's motive in burning the building is ascribed to a desire to collect the insurance, and considerable evidence was introduced to show the personal property was not worth the amount claimed, but there was a wide range of values testified to by the several witnesses for the state. The value of the building as evidenced by its size and cost of construction was plainly more than the insurance, but it is claimed appelant had no further use for the building and it was therefore valueless to him. It does appear, however, that he was then using, and had for a long time used, the building as a dwelling for help and at times for himself and family.

During the cross-examination of appellant and after he had testified that he considered the building worth $3,500 and that he lost money by the fire, he was shown certain tax lists or schedules of property used by the assessor in the assessment of property and questioned concerning the values therein shown. One of these lists was for the year 1916 and was excluded. Another was for the year 1922, but for some defect that was also excluded. A third was for the year 1921 and showed the value of the building at $300. This exhibit was admitted in evidence over the proper objection, and its admission is assigned as error.

We do not deem it necessary to consider all of the errors alleged, as we are convinced that the admission of this tax list or assessor's schedule was error. Our statute, §§ 6708, 6709, requires the owner of property to list his porperty with the assessor under oath; the values to be fixed are required to be made by the assessor. Appellant denied fixing the value himself and stated that he did not think he had been asked what the property was worth. The

exhibit was in no sense an admission against interest, nor, so far as the evidence discloses, was it an admission of the value of the property, nor was it competent to bind appellant as having fixed a value thereon.

Was the error prejudicial? In view of the seriousness of the charge and the grave consequences to appellant, coupled with the fact that there is so little evidence corroborating the accomplices connecting him with the crime and almost none corroborating the accomplices as to the corpus delicti, we cannot say that the admission of the list was not prejudicial. The value in the assessor's list was so much less than the amount for which the building was insured, and the motive so important as a circumstance to establish guilt, that it might well be the determining factor in the decision of the jury. While the mere fact that a man has a motive for a fire and that he did benefit by the burning of a building does not prove that he did in fact burn it, it does in the face of the accomplices' testimony tend in some degree to connect the appellant with the burning of the building if the jury are convinced that the burning was in fact incendiary. Our Code, § 4882, requires the testimony of an accomplice to be corroborated. We do not hold there is no other corroboration, but it is meager.

This court is divided on the merits of the assignment, covering the denial of a change of venue. As it is not likely the showing will be identical if a change is asked on a retrial, we will not review the showing in detail. Appellant is entitled to a fair trial. An excited state of public feeling is always the most unfavorable for an investigation of the truth. Not only should the minds of the jurors be without bias and prejudice, but they should be removed from the bias and prejudice of others. State v. Meservey (S. D.) 220 N. W. 139; State v. Perkins, 36 S. D. 579, 156 N. W. 73. With these cautionary remarks we leave the matter of a change of venue in this case, if it shall again arise, to the sound judicial discretion of the trial judge subject to review by this court if such discretion is abused.

We do not deem it necessary to consider other errors assigned, but for the error in admitting the assessor's list the case must be reversed.

The judgment and order appealed from are therefore reversed.

SHERWOOD, P. J., and POLLEY, CAMPBELL, and BROWN, JJ., concur.