STATE, Respondent, v. CORNER, et al, Appellants.

(237 N. W. 912.)

(File No. 7234. Opinion filed September 21, 1931.)

*Windsor Doherty*, of Winner, for Appellant.

*M. Q. Sharpe*, Attorney General, *Herman L. Bode*, Assistant Attorney General, and *J. L. Hannett*, State's Attorney, of Winner, for the State.

WARREN, J. Appeal by Harry Robinson from a conviction charging Corner, Worcester, and Robinson jointly with the crime of manufacturing intoxicating liquor for the purpose of sale. The jury returned a verdict of not guilty against two of the defendants, but found the appellant, Robinson, guilty of the charge. Upon a motion for new trial, the appellant submitted his affidavit alleging some of the occurences of the trial, among which are his talking to several jurymen as to how they stood before they were taken out to a midnight lunch. He then alleges that while the jury was in the restaurant, they overheard one Salmon, who had testified as a witness for defendants, talking in a loud manner, stating that the Todd county men were going to show that the Tripp county men could not run their business. That Salmon's statement caused considerable resentment among the jurors, and after the jury returned to the jury room, the statements that Salmon had made were discussed, and that after the deliberation, a vote of the jury afterwards taken on defendant's question of guilt, showed that a number more voted for his conviction than on the previous ballot. The latter portion of appellant's affidavit is as follows: "That finally one of the jurymen suggested that they make a compromise and acquit Frank Corner and convict this deponent. That after some discussion on the matter they agreed upon settling the

verdict by such compromise and the juryment who were for acquittal for this deponent agreed to convict him if those who were voting for conviction for Frank Corner would vote for his acquittal and this agreement and compromise was carried out and a verdict rendered accordingly, convicting this deponent and acquitting the said Frank Corner. That the said jurymen this deponent talked to told this deponent that he was not convicted by the honest judgment and conviction of all of the said jurymen, but that those who were for his acquittal changed their votes in order to get the case settled and get released."

Appellant's affidavit is followed by one Emmert, a juror. He related the restaurant incident, but qualified his affidavit by saying: "He made some statements (referring to Salmon) which this deponent did not exactly hear himself, but later on, while said jury was consulting together on the case and before they reached a verdict, one of the other jurymen told this deponent that said Salmon had stated in the presence of the jury, etc." The affidavit then related the substance of appellant's affidavit. A portion of the juror's affidavit is as follows: "That on the following morning, shortly before a verdict was rendered, someone of the jury made a proposition that they had been there a long time and couldn't agree and they were about to ask the Court to call them in and advise the Court that they could not reach an agreement, when it was suggested that they make a compromise by acquitting Corner and convicting Robinson. That thereupon, after further consideration said compromise was made, and all of the jurors then voted for the acquittal of Frank Corner and voted for the conviction of Harry Robinson. That deponent does not remember exactly how the vote stood when the said compromise was made, but to his best recollection it stood about 7 for conviction and 5 for acquittal on the said Harry Robinson and the parties voting for acquittal changed their vote for conviction on account of said compromise and acquitted Frank Corner." Three more jurors made affidavits in substance the same as the one immediately above. Four jurymen submitted affidavits in behalf of the state, a portion of which is as follows:

"Deponent further says that he did not hear Mr. Salmon say anything, in reference to the case, which had been submitted to them as jurors.

"Deponent further says that the fact that Mr. Salmon appeared at the said restaurant did not, in any manner effect this juror in passing upon the evidence of and in said case.

"Deponent further says that his opinion was based solely upon the evidence given from the stand, under the instruction of the Court, and that anything that passed in the restaurant did not, in the slightest degree, effect his verdict in this action."

In State v. English, 41 S. D. 560, 172 N. W. 116, this court, construing misconduct of jurors and the attempt to impeach their verdict by their own affidavits, said: "This charge of misconduct was supported, on motion for new trial, by the affidavits of two jurors and of two other persons. The weight of authority supports the proposition that, in both civil and criminal cases, the testimony of jurors is not competent to impeach their verdict except that, in some states, as in this, it is allowed for the purpose of proving that a verdict was arrived at by a resort to chance. 12 Cyc. 749-751; 29 Cyc. 982. This is the established law of this state both in civil and criminal cases. Murphy v. Murphy, 1 S. D. 316, 47 N. W. 142, 9 L. R. A. 820; Thompson v. Gunderson, 10 S. D. 42, 71 N. W. 764; Long v. Collins, 12 S. D. 621, 82 N. W. 95; Ewing v. Lunn, 22 S. D. 95, 115 N. W. 527; Territory v. King, 6 Dak. 131, 50 N. W. 623; State v. Andre, 14 S. D. 215, 84 N. W. 783; State v. Kiefer, 16 S. D. 180, 91 N. W. 1117, 1 Ann. Cas. 268. We must presume that the trial court disregarded the affidavits of the two jurors."

The defendant strenuously insists that the rule forbidding the jurors from impeaching their verdict does not include a showing made by the jurors of facts relating to misconduct which does not inhere in the verdict itself. At first blush, that would seem to be logical, but upon a more serious reflection and considering the authorities, we come to the conclusion that the juror's affidavits can not be considered. However, it is argued that the verdict in this case was reached by means other than a fair expression on the part of the jurors and therefore they may be heard to impeach it. The facts here presented do warrant a general inquiry into the meaning of the statutory phrase: "Or by any means other than a fair expression of opinion on the part of all of the jurors. * * *" Section 4945, S. D. Rev. Code 1919. Any attempt in that direction would be mere speculation at this time.

The alleged misconduct of which appellant complains, falls within the provisions of this subdivision, but it cannot be shown by the jurors themselves. The law does not undertake to limit or control the arguments by which one juror may convince the mind of another. State v. Wakely, 43 Mont. 427, 117 P. 95, 96. "It is not for a juror to say what effect certain conduct may have had upon the verdict, because of the well-known principle that he cannot be heard to impeach the verdict; but the court must determine from the facts stated what effect, if any, the alleged misconduct had upon the verdict. State v. Parker, 25 Wash. 405, 65 P. 776." Marvin v. Yates, 26 Wash. 50, 66 P. 131, 134; Ralton v. Sherwood Logging Co. (decided July 17, 1909), 54 Wash. 254, 103 P. 28.

In the well-considered case of Keith v. State, 7 Okl. Cr. 156, 123 P. 172, the Criminal Court of Appeals of Oklahoma, reaffirming what they had said in previous decisions, stated:

"It has been repeatedly decided by the unanimous opinions of this court that the affidavits of jurors cannot be received for the purpose of impeaching their verdict.

"In the case of Vanderburg v. State, 6 Okl. Cr. 486, 120 P. 301, Judge Doyle, speaking for the court upon this very question, said: 'It will be sufficient to say on this question that jurors will not be allowed to impeach their verdict by their affidavits or testimony after they have been discharged.'

"In the case of Spencer v. State, 5 Okl. Cr. 11, 113 P. 226, this court said: 'Jurors cannot be heard to impeach their verdict, unless expressly authorized to do so by statute, and then only in the manner provided by statute. When jurors are impaneled, they are sworn to decide the case submitted to them according to the law and the evidence. For a juror to make an affidavit that he has violated his oath and rendered a verdict upon any other ground than the sworn evidence in a case places him in contempt of court. * * * If, after being discharged and mingling with the public jurors are permitted to impeach verdicts which they have rendered, judgment based upon verdicts of juries would rest upon a very uncertain foundation.' * * *

"As was well said by Chief Justice Mansfield, if a verdict can be impeached by the affidavit or testimony of a juror, then in any criminal case tried in the state, no matter how conclusive the testimony and how regular the trial may have been in other respects,

it will be in the power of one juror to secure a reversal of a conviction, and at the same time do it in such a manner as to conceal the purpose for which it was done, and thereby exempt himself from punishment. Such a juror could insist that the amount of punishment should be arrived at by lot, or he could make statements to the other jurors highly damaging to the defendant; then afterwards it would not be necessary for him to file an affidavit as to how the verdict was reached in the case, for, if the right to impeach a verdict by affidavit of a juror exists, the right to have the entire jury summoned and placed on the stand and examined as to what occurred in the jury room also exists; and when a verdict was rendered, as above indicated, such juror might have been the most zealous for conviction, when, as a matter of fact, he was working solely in the interests of the defendant. If this can be done, it places in the hands of a defendant the power to set aside any verdict that might be rendered against him, provided only he can find a juror who will be willing to carry out the program. It may be stated that this is an extreme illustration; but it must be remembered that the extreme case is the test of the rule."

In the case at bar, we have four jurors' and appellant's affidavits stating to the effect that it was a compromise verdict; opposed we have the affidavits of four jurymen that their opinion was based fully and solely upon the evidence given from the stand and under the instruction of the court. Opposed, in addition to the affidavits submitted in behalf of the state, and opposed to the statements of appellant is the presumption indulged in by the court that the jurymen have performed their duty fairly and impartially. The learned circuit court which tried the case was necessarily familiar with the facts in the case; he found against the appellant, and under the record as here presented, we cannot say that the court's ruling upon the motion for a new trial and the court's findings are not sustained by the evidence. Other courts have gone further than we have in holding that a juror cannot, by his own affidavit, impeach the verdict, even in cases that have practically amounted to coercion. The Supreme Court of Washington, in State v. Aker, 54 Wash. 342, 103 P. 420, 422, 18 Ann. Cas. 972, said: "That during the course of said trial, in the jury room, other jurors learned from the affiant that he had talked with the defendant about the charge on which he was being tried; that

after said cause was submitted to said jury, and the jurors had retired to deliberate upon their verdict, the affiant voted on two ballots in favor of acquittal; that thereupon other jurors, upon learning that affiant was casting his vote in favor of acquittal, threatened the affiant that, unless he ceased to do so, and joined with the other jurors in finding a verdict of guilty as charged, they would denounce him to the court for having consented to serve upon said jury after talking with the defendant about the charge brought against him; that the affiant, not being versed in the law, and thinking that possibly he had done something he should not have done, and made himself liable to penalties, thereupon voted with the other jurors on the next succeeding ballot. We think this also relates to facts which cannot be shown by the affidavit of a juror. It is a matter inhering in the verdict, and to receive such statements from a juror is clearly to allow him to impeach his own verdict. 29 Cyc. 984; Thompson on Trials, § 2618." See, also, State v. Keehn, 85 Kan. 765, 118 P. 850, 855-856.

It often happens that a jury, upon retiring to consider the evidence, finds its members unable to agree and finally reaches a verdict by yielding to one side or the other. In this case the jurors had disagreed, and while we do not concede that the facts improperly disclosed by the affidavits were not in the sense a verdict by compromise, but if it might for the purpose of argument be construed as a verdict of compromise where no undue influence is shown and no reaching of the result by lot or by chance of stratagem, the verdict must stand.

Upon a careful review of all of the errors urged by appellant, we must hold that the trial court, who presided during the trial and listened to the motion for a new trial upon all the grounds urged, did not err in refusing to grant the appellant a new trial.

The judgment and order appealed from are affirmed.

POLLEY, P. J., and CAMPBELL, ROBERTS, and RUDOLPH, JJ., concur.