**STATE of South Dakota, Plaintiff and Appellee,**

v.

**Mern N. FINNEY, Defendant and Appellant.**

**No. 13956.**

Supreme Court of South Dakota.

Considered on Briefs May 24, 1983.

Decided July 27, 1983.

Rehearing Denied Sept. 7, 1983.

---

---

Mikal Hanson, Asst. Atty. Gen., Mark V. Meierhenry, Atty. Gen., on brief, Pierre, for plaintiff and appellee.

Michael P. Ortner of Ortner & Ortner, Hot Springs, for defendant and appellant.

DUNN, Justice.

This is an appeal from a judgment of conviction on four counts of grand theft, in violation of SDCL 22–30A–1 and SDCL 22–30A–17(2). We affirm.

Mern N. Finney (appellant) was charged with the theft of four horses in Shannon County, South Dakota. Appellant pleaded not guilty and a jury trial was held on July 28, 1982.

During voir dire, Elvina Hunter (Hunter), a prospective juror, stated that some horses had been stolen from her some ten years before. She believed this incident would cloud her judgment in the case. She also stated "I sure don't like them stealing horses at all. They're the Indians pride and joy." Although Hunter did not serve on the jury panel, the prosecutor did repeat Hunter's statement to the jury during closing arguments. Appellant's objection to the statement was sustained and the jury was admonished to disregard the comment. Appellant did not make a motion for mistrial as a result of the prosecutor's statement and did not request additional curative instructions.

An hour and ten minutes after retiring to deliberate, the jury submitted a note to the trial court informing it that they could not reach a decision. With consent of both counsel, the trial court informed the jury that they could continue to deliberate, declare themselves hopelessly deadlocked or quit for the evening and begin again in the morning. The jury chose to stay and fifty minutes later, at 10:15 p.m., the jury reported a unanimous jury verdict. On polling, however, one of the jurors was confused on two of the counts. The trial court sent the jury back to continue their work. Then, the trial court dismissed appellant's motion for mistrial based on the grounds of "problems with jury deliberations." At 10:45 p.m., approximately two and one-half hours after beginning deliberations, the jury returned with a unanimous guilty verdict on all counts. This time, the polling confirmed the verdict.

The day after the trial, the jury foreperson signed an affidavit alleging fellow jurors pressured her with racial comments to vote for a guilty verdict. Appellant's motion for a new trial based on this affidavit alleging jury misconduct was denied by the trial court.

Appellant's primary grounds for appeal stems from the affidavit submitted by the jury foreman. Appellant alleges the trial court erred in refusing to grant a new trial on the grounds of jury prejudice. We cannot agree.

■ SDCL 19–14–7 allows a juror to testify as to matters occurring during the course of jury deliberations "on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror." While we have said affi-

davits of jurors are admissible to support a verdict, *State v. Holt,* 79 S.D. 50, 107 N.W.2d 732 (1961); *State v. McCoil,* 63 S.D. 649, 263 N.W. 157 (1935), we have consistently said that affidavits of jury members may not be used to impeach a jury verdict except to show the verdict was decided by lot or was affected by extraneous matters. *State v. Gallegos,* 316 N.W.2d 634 (S.D. 1982); *State v. Larkin,* 87 S.D. 61, 202 N.W.2d 862 (1972); *State v. Corner,* 58 S.D. 579, 237 N.W. 912 (1931).

■ Appellant contends that racial prejudice allegedly demonstrated by Native American jurors constitutes an "outside influence." D. Lousiell & C. Mueller, Federal Evidence, § 289 at 143, in discussing Federal Rule of Evidence 606(b) from which SDCL 19–14–7 derives, state the outside influence exception to the basic exclusionary rule "paves the way for impeachment of verdicts by proof of serious and blatant efforts to interfere with the jury's deliberations, such as attempts to bribe jurors or to threaten them or their families." The authors point out, however, that the "exception does not reach cases of coercion of one juror by others, which by definition does not constitute 'outside' influence." D. Lousiell & C. Mueller, § 289 at 149. Although appellant does cite us to one case from the United States District Court for the Western District of New York, *Tobias v. Smith,* 468 F.Supp. 1287 (W.D.N.Y.1979), we do not find it persuasive. We believe, as stated in *Government of Virgin Islands v. Gereau,* 523 F.2d 140, 150 (3rd Cir.1975) *cert. denied* 424 U.S. 917, 96 S.Ct. 1119, 47 L.Ed.2d 323 (1976), that "evidence of discussions among jurors, intimidation or harassment of one juror by another, and other intra-jury influences on the verdict is within the rule, rather than the exception, and is not competent evidence to impeach a verdict." Accordingly, the trial court properly denied appellant's motion for a new trial.

■ Appellant next contends the prosecutor's use of Hunter's voir dire statement, "I sure don't like them stealing horses at all. They're the Indians pride and joy" rises to the level of reversible error. In *State v. McNamara,* 325 N.W.2d 288 (S.D. 1982), this court cited with approval the position taken by Justice Henderson in his special concurrence in *State v. Kidd,* 286 N.W.2d 120 (S.D.1979). As Justice Henderson noted in *Kidd:*

It is incumbent upon defendant to challenge by a proper objection a statement made in court and obtain a ruling upon the objection thereto. "[T]he defendant should then request the trial court to give a proper instruction thereon; and, failing to do so, he cannot now be heard to complain." *State v. Christiansen,* 46 S.D. 61, 67, 190 N.W. 777, 779 (1922).

286 N.W.2d at 123. Appellant's failure to request instructions after the trial court had already admonished the jury leads us to conclude the prosecutor's comments do not constitute reversible error.

■ Finally, appellant contends the trial court erred in not granting his motion for mistrial on grounds of "problems with jury deliberation" when one of the jurors was confused as to two of the counts. Appellant, without providing any substantiation, asserts the verdict in this case was the result of "fatigue, exhaustion, weariness and physical and mental inability of the disagreeing minority jurors to withstand the arguments and importunities of the majority." We find this assertion to be without foundation in the record.

■ Here, the jury had been out only two hours when it reported its verdict. Pursuant to SDCL 23A–26–10,* the jury was directed to retire for further deliberations to resolve the confusion of one of the jurors. Less than one-half hour later, the jury returned with its verdict and it was confirmed by all of the jurors. We must agree with the State's conclusion that the

* SDCL 23A–26–10 provides:
After a verdict is returned but before it is recorded, the jury shall be polled at the request of any party or upon the court's own motion. If upon the poll there is not unanimous concurrence, the jury may be directed to retire for further deliberations or may be discharged.

trial court's conduct did not amount to coercion, *see State v. McNamara, supra,* nor did it deny appellant a fair trial as guaranteed by the United States and South Dakota Constitutions.

The judgment of conviction is affirmed.

FOSHEIM, C.J., and MORGAN, J., concur.

WOLLMAN, J., concurs specially.

HENDERSON, J., dissents.

WOLLMAN, Justice (concurring specially).

As the majority opinion points out, SDCL 19–14–7, as adopted by this court in 1978, was taken from Rule 606(b) of the Federal Rules of Evidence. The original draft of Rule 606(b) as prepared by the Advisory Committee, contained a very narrow exclusionary rule. As revised by the Advisory Committee, however, and as submitted to Congress by the United States Supreme Court, Rule 606(b) contained a significantly broader prohibition against juror impeachment of verdicts. Efforts were made in the House of Representatives to narrow the exclusion, but the Senate Judiciary Committee restored the broader exclusion proposed by the Advisory Committee and the Supreme Court, and it was this broadened version that was finally adopted by Congress. *See* Mueller, "Jurors' Impeachment of Verdicts and Indictments in Federal Court Under Rule 606(b)," 57 Neb.L.Rev. 920, 928–30 (1978); 3 J. Weinstein & M. Berger, Evidence, 606–2—606–9 (1982).

Rule 606(b) as finally adopted thus reflected a conscious, deliberate choice on the part of the Advisory Committee, the Supreme Court, and Congress to limit the scope of post-trial attacks upon verdicts.

What constitutes extraneous prejudicial information or improper outside influence can range from the straightforward, relatively simple case, *e.g.,* newspaper accounts of a defendant's activities, *United States v. McKinney,* 429 F.2d 1019 (5th Cir.1970), *cert. denied,* 401 U.S. 922, 91 S.Ct. 910, 27 L.Ed.2d 825 (1971), to the difficult question presented by the instant case. I say difficult, because since prejudice is so abhorrent to the judicial process there is a temptation to speak in magniloquent terms in expressing our condemnation of it and in fashioning remedies to counteract it.

Read literally, SDCL 19–14–7 would bar the consideration of the proffered affidavit of juror Stabnow (quoted in full in Justice Henderson's dissent, *infra* ).

> But what should be done in terms of Rule 606(b) if a juror has stated that he does not trust convicts, after evidence of a conviction is used to impeach pursuant to Rule 609, or has commented adversely on the religion of a witness, or has referred in an uncomplimentary manner to the length of the defendant's hair, and proof of these statements if offered on a motion for a new trial? Can proof of these statements or some of these statements be separated from proof of the effect these statements had on the minds of the jurors, or are the two so inextricably interwoven that the entire testimony should be rejected under the Rule? The line may be very difficult to draw. Generally, it seems better to draw it in favor of juror privacy; in the heat of juror debate all kinds of statements may be made which have little effect on outcome, though taken out of context they seem damning and absurd. The amendments to the 1971 draft discussed in ¶ 606[1], *supra,* support this interpretation.

3 J. Weinstein & M. Berger, *supra,* ¶ 606[4], 606–33—606–34 (footnotes omitted).

The Supreme Court of Wisconsin has responded to the broad exclusionary bar of Rule 606(b) by recognizing the competing interests of juror privacy and fairness to litigants.

> While the rule against impeachment of a jury verdict is strong and necessary, it is not written in stone nor is it a door incapable of being opened. It competes with the desire and duty of the judicial system to avoid injustice and to redress the grievances of private litigants.
>
> . . . .

The concern for fairness to the parties and monitoring the integrity of the judicial system leads us to conclude that a trial court may, in appropriate circumstances, consider allegations that extraneous prejudicial remarks were made to jurors which were not a part of the judicially guarded evidence they received.

*After Hour Welding v. Laneil Management Co.,* 108 Wis.2d 734, 737–39, 324 N.W.2d 686, 689–90 (1982) (footnote omitted).**

Prejudice can take many forms. *After Hour Welding, supra,* 108 Wis.2d at 739, 324 N.W.2d at 690. Although one is loath to chart a hierarchy of prejudices, most would agree that racial prejudice is especially repugnant to the impartiality that is a criminal defendant's constitutional due.

Notwithstanding the broad sweep of SDCL 19–14–7, then, there may be cases, whether because of inadequate voir dire or otherwise, where evidence of the manifestation of racial prejudice during jury deliberations is so clear cut as to warrant a relaxation of the exclusionary aspects of SDCL 19–14–7. *See Smith v. Brewer,* 444 F.Supp. 482 (D.S.D.Iowa 1978), *aff'd,* 577 F.2d 466 (8th Cir.1978), *cert. denied,* 439 U.S. 967, 99 S.Ct. 457, 58 L.Ed.2d 426 (1978). As Professor Mueller has written:

Serious and sensitive problems may arise if it can be made to appear that a verdict was the product of egregious racial or ethnic prejudice. If proof to this end depends upon the testimony or statements of one or more jurors after the verdict, Rule 606(b) stands as a potential bar, since such proof arguably goes to the "effect" of something upon the minds of such jurors, or the "mental processes" of these jurors. On the other hand, it is again at least arguable that such considerations amount to "outside influence" as to which impeaching evidence should be allowed.

. . . Clearly the counsel of the rule, however, is to be conservative in the ap-

proach to such problems and to err upon the side of exclusion rather than receipt of evidence in close cases.

57 Neb.L.Rev. at 942–43 (footnotes omitted).

*Pace* the dissenting opinion, it draws more inferences from juror Stabnow's affidavit than that document will properly yield. The force of affidavit is largely vitiated by the fact that juror Stabnow was attempting to recant her vote. Under the broadest possible reading of SDCL 19–14–7, she would not be permitted to do so. As Judge Hanson said in his thoughtful, thorough opinion in *Smith v. Brewer, supra:*

Mrs. Elliott's statements relative to the pressures put upon her to change her vote are similarly barred from consideration. Though Mrs. Elliott claims to have been subjected to strong pressure from other jurors, that fact constitutes neither extraneous information nor improper influence to which she could testify. Furthermore, it is too late in the day to assert that Mrs. Elliott was intimidated into joining in the guilty verdict against her will. After the jury returned its verdict, Mrs. Elliott and the other jurors were asked by the trial judge whether the verdict was the decision of each member of the jury. Mrs. Elliott remained silent and thereby assented to the verdict. Under these circumstances, the opportunity for Mrs. Elliott to renounce the verdict has passed.

444 F.Supp. 482, 488 (citations omitted). So also, juror Stabnow will not now be belatedly heard to deny the vote she affirmed when the jury was polled.

Excising the self-serving portions of the affidavit, then, we are left with juror Stabnow's bald statement that extreme racial prejudice was expressed throughout the deliberations and that the jury did not look at the facts in the case. The only specific reference to any racial comments by the members of the jury are her allegations

---

** My reference to this case does not necessarily signal my agreement with all that the Wisconsin court said and held therein. I am not so sure that I would relax the bar of SDCL 19–

14–7 in civil cases, nor do I necessarily agree with the procedure prescribed to be followed by the trial court.

that she had been accused by her fellow jurors of being racially prejudiced in such a manner as to not want to convict defendant. If in fact the other jurors made this statement, was it anything more than a part of the normal give and take of jury deliberations? Indeed, was it anything more than an appeal to juror Stabnow to decide the case on the basis of the evidence and not on the basis of her racial affinity with the defendant? I would answer no to both questions.

In the light of the legislative history of Rule 606(b) and in the light of the strong policy considerations in favor of maintaining the privacy of jury deliberations, I conclude that juror Stabnow's affidavit does not warrant a relaxation of the exclusionary provisions of SDCL 19–14–7, and I therefore join in affirming the judgment of conviction.

HENDERSON, Justice (dissenting).

I dissent. There should be no injection of race into jury deliberations and the foreperson in this case had her will overcome by manifestations and accusations of racial prejudice. There can be no place in our system of American Jurisprudence for arriving at a verdict of either innocence or guilt by the intimidation of a juror through appeal of racial prejudice. This jury room became a room of bigotry, bias, and terror. This verdict was infected by racial considerations. Such cannot be in a free society. The heart of the jury process, impartial deliberation, was destroyed. It was an abomination of everything that this great country stands for. Appellant's fundamental right to a fair trial and an impartial jury, rights guaranteed to him by the Fifth, Sixth, and Fourteenth Amendments, was taken from him by a thirteenth juror, racial prejudice.

1. Although tried at Hot Springs, county seat of Fall River County, all jurors were drawn from Shannon County, South Dakota, situs of the alleged crime. Shannon County is attached to Fall River County for judicial purposes. According to the United States Census Bureau,

Factually, the foundation of my dissent is formed in a properly verified affidavit of the foreperson of the jury. It follows:

Comes now Kalomera Stabnow and being first duly sworn, deposes and states as follows:

That I was a member and foreman of the jury which heard the case of the State of South Dakota vs. Mern Finney in Hot Springs, South Dakota, on July 28, 1982.[1] That I believe Mr. Finney should be granted a new trial because of juror misconduct in the case. *There was extreme racial prejudice expressed throughout the jury deliberations.* The other eleven jurors, all native americans, constantly accused me of trying to save a white person just because I was a white person. The jury was not looking at the facts in the case but basically considered the matter as an Indian-white issue between Victor Dreaming Bear and Mern Finney. Since we had not been able to reach agreement regarding the guilt or innocences [sic] of Mr. Finney, I suggested that we sleep on the matter and begin our deliberations again on the morning of July 29. The other jurors kept saying that they had to get home and that we had to make a decision that same night and they kept accusing me of being racially prejudiced. I was extremely tired and just did not have the strength to resist the pressure to vote for a guilty verdict. At no time was I convinced by the evidence of Mr. Finney's guilt. I know it was wrong to vote for a guilty verdict when I did not believe the man to be guilty, but I just did not have the strength to resist the pressure from the other jurors or their accusations of my being racially prejudiced.

There were also two other jurors on the jury panel who did not agree on a verdict of guilty on all of the counts charged and

1980 Census, Shannon County has 10,574 American Indians and 717 Caucasians of which this author takes judicial notice. Appellant was a member of a minority race and the foreperson was a minority of one on the jury.

they were also pressured by the remaining jurors to change their votes to guilty.

Dated this 4th day of August, 1982.

Signed/<u>Kalomera Stabnow</u>

(Emphasis supplied.)

An examination of Federal Rule of Evidence 606(b), codified as SDCL 19–14–7, is vital to our academic endeavors. It states:

Except as otherwise provided by statute, upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith, *except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether outside influence was improperly brought to bear upon any juror.* Nor may his affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying be received for these purposes. (Emphasis supplied.)

What is extraneous prejudicial information and what is an outside influence improperly brought to bear upon any juror? Surely, racial prejudice is not permitted inside the courtroom, so it must come from the outside. Obviously, racial prejudice is prejudicial to any man's or woman's case and it is patently improper. I am for protecting jurors against annoying incidents and embarrassment. I realize that verdicts must have stability and that jurors must have freedom of deliberation, but likewise it is indispensable for a juror to keep his or her solemn oath to decide the case impartially under the evidence.[2] SDCL 19–14–7, which is set forth above, embodies a major exception to the rule that jurors will not be able to function effectively if their deliberations are scrutinized in post-trial proceedings.

In *State v. Levitt,* 36 N.J. 266, 176 A.2d 465 (1961), the Supreme Court of New Jersey held that a trial judge did not abuse his discretion in setting aside a verdict on the grounds that it was contaminated with religious prejudice of a juror. Essentially, it was contended by the State of New Jersey, as it is now contended by the State of South Dakota, that the juror's comments arose out of observations and legitimate deductions made during the trial of the case, i.e., it was not extraneous information. In ordering a new trial, the trial judge stated:

"There seems to be little doubt in this case this man's religion [defendant is Jewish] was injected into the deliberations of this jury; that is corroborated. There seems to be little doubt that at least one person on that jury was affected, and it seems prejudicially so and it makes little difference that the infection was only slight so long as it is present.

\*    \*    \*    \*    \*    \*

[T]he deliberations \* \* \* should be free of taint of passion, prejudice or mistake." *Levitt,* 36 N.J. at 270, 176 A.2d at 467. Quoting from a 1957 New Jersey Supreme Court case, *Wright v. Bernstein,* 23 N.J. 284, 294–95, 129 A.2d 19, 25 (1957), the New Jersey Court in *Levitt,* upheld the trial court:

The jury is an integral part of the court for the administration of justice and on elementary principles its verdict must be obedient to the court's charge based solely on legal evidence produced before it and entirely free from the taint of *extraneous considerations and influences.* The parties to the action are entitled to have each of the jurors who hears the case *impartial, unprejudiced and free from improper influences.* (Emphasis supplied.)

In the case at bar, rank prejudicial and racial arguments were interjected by eleven Native American jurors to crunch down upon the one white person on the jury to convict. It was an improper influence and it tainted the jury's verdict. The racial

---

**2.** Jury Instruction # 15 provided: "The jury are the sole judges of the facts and must determine what the facts are from the evidence, and only from the evidence in the case, guided by the rules of law as given to you by the Court in these instructions."

appeal to the foreperson of this jury, as reflected by her affidavit, was an appeal to violence.[3] In *People v. Malkin,* 250 N.Y. 185, 201, 164 N.E. 900, 907 (1928), it was expressed:

> Society may be endangered as much by the violence of its friends as of its enemies, and an appeal to prejudice as a factor in determination of guilt is, in the final analysis, an appeal to violence. The majesty of the law must remain unchallenged. It is threatened by each trial where there is a justified doubt of fairness and impartiality.

In *United States ex rel. Haynes v. McKendrick,* 481 F.2d 152 (2nd Cir.1973), the prosecutor's summation, which included repeated references to colored people, their hair styles, and how they should be viewed as an entity separate and apart from themselves (white people) was held to introduce racial prejudice into the trial and denied the defendant's constitutional right under the due process clause. In said case, at 157, the United States Second Circuit Court of Appeals stated: "Racial prejudice can violently affect a juror's impartiality and must be removed from the courtroom proceeding to the fullest extent possible." And that Court further expressed: "It negates the defendant's right to be tried on the evidence in the case and *not on extraneous issues.*" (Emphasis supplied.) This case also mentions the general principle that convictions are to be overturned on Fourteenth Amendment grounds where racial prejudice is a major factor in the fibre of a trial and cites numerous federal decisions holding that a fair trial is a fundamental requisite of due process of law. In the case at bar, the affidavit of the foreperson should not be examined in a vacuum, it should be reviewed against the backdrop of the entire case.

In *United States ex rel. Owen v. McMann,* 435 F.2d 813, 818 at n. 5 (2nd Cir.1970), commenting upon *United States v. McKinney,* 429 F.2d 1019 (5th Cir.1970), cert. denied, 401 U.S. 922, 91 S.Ct. 910, 27 L.Ed.2d 825 (1971), this rule was enunciated:

> In short, the inquiry is not whether the jurors "became witnesses" in the sense that they discussed *any* matters not of record but whether they discussed specific extra-record *facts* relating to the defendant, and if they did, whether there was a significant possibility that the defendant was prejudiced thereby. (Emphasis in original.)

Here, the extra-record facts relating to appellant and this case were that this was an "Indian-white issue between Victor Dreaming Bear and Mern Finney" and that the foreperson "was a white person" trying to "save a white person," namely, appellant. Appellant's race was an improper jury consideration and there should be no injection of race into jury deliberations.

I next cite *Tobias v. Smith,* 468 F.Supp. 1287, 1291 (W.D.N.Y.1979), which interpreted Federal Rule of Evidence 606(b), codified as SDCL 19–14–7, and I quote:

> There can be no quarrel with the proposition that the race of a defendant is an improper consideration for a jury, just as ethnic origin and religion are. *Cf. United States ex rel. Haynes v. McKendrick,* 481 F.2d 152 (2nd Cir.1973). There should be no injection of race into jury deliberations and jurors who manifest racial prejudice have no place in the jury room. *Certainly, where a probability of such prejudice can be demonstrated, it would constitute sufficient grounds for ordering a new trial.* See *McKendrick, supra,* at 159, and *United States ex rel. Owen v. McMann,* 435 F.2d 813 (2nd Cir.1970), cert. denied, 402 U.S. 906, 91 S.Ct. 1373, 28 L.Ed.2d 646 (1971), both of which discuss the "probability of prejudice" test. (Emphasis supplied.)

Under Rule 606(b) of the Federal Rules of Evidence, a court may receive evidence of the fact that extraneous prejudicial influences were improperly brought to the jury's

---

**3.** On the morning after the trial, the foreperson called the judge expressing that extreme racial prejudice had been expressed throughout the jury deliberations by the eleven Native Americans on the jury and that she had been psychologically and mentally browbeaten.

attention. Solace do I find in language of *Smith v. Brewer,* 444 F.Supp. 482, 490 (S.D. Iowa 1978):

> [T]he Court does not suggest that the rule of juror incompetency embodied in Rule 606(b) should be applied dogmatically and in complete disregard of what is alleged to have occurred in the jury room. In *McDonald v. Pless* the Supreme Court admonished that "there might be instances in which such testimony of the juror could not be excluded without 'violating the plainest principles of justice' "—an admonition particularly pertinent in criminal cases. 238 U.S. [264] 268–69, 35 S.Ct. [783] 785 [59 L.Ed. 1300]. Where, for example, an offer of proof showed that there was a substantial likelihood that a criminal defendant was prejudiced by the influence of racial bias in the jury room, to ignore the evidence might very well offend fundamental fairness.

Here, appellant was never permitted a hearing to present an offer of proof.

Whenever it comes to a trial court's attention that a jury verdict may have been the result of any form of prejudice based on race, religion, gender or national origin, judges should be especially sensitive to such allegations and conduct an investigation to "ferret out the truth." *Morgan v. United States,* 399 F.2d 93, 97 (5th Cir.1968), *cert. denied* 393 U.S. 1025, 89 S.Ct. 635, 21 L.Ed.2d 568 (1969). For even if only one member of a jury harbors a material prejudice, the right to a trial by an impartial jury is impaired. *United States v. Booker,* 480 F.2d 1310 (7th Cir.1973).

*After Hour Welding v. Laneil Management,* 108 Wis.2d 734, 739–40, 324 N.W.2d 686, 690 (1982). It is academically obvious that this case should be reversed and remanded with instructions to the trial court that it take evidence as to the jury's verdict in this case to determine if the verdict was discolored, tainted, and infused with improper jury influences.[4] Such evidence would also embrace whether a prospective juror did not tell the truth about prejudice or preconceived notions of guilt.[5] A determination could be made if the verdict in which jurors participated was a nullity. *People v. Leonti,* 262 N.Y. 256, 186 N.E. 693 (1933). The scope of this state's nonimpeachment rule, as announced by the majority decision, cannot escape the constitutional dimensions of appellant's Sixth Amendment rights to confront witnesses, assistance of counsel, and to an impartial jury.[6] *Coleman v. Alabama,* 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387 (1970). Art. VI, § 7, S.D. Const. provides that the defendant is entitled to trial by an *impartial* jury. "Not only should the minds of the jurors be without bias or prejudice, but they should be removed from the bias, prejudice and excitement of others." *State v. Belt,* 79 S.D. 324, 328, 111 N.W.2d 588, 590 (1961), citing *State v. Meservey,* 53 S.D. 60, 65, 220 N.W. 139, 141 (1928), and *State v. Demerly,* 56 S.D. 65, 70, 227 N.W. 463, 465 (1929). *See also, State v. Volk,* 331 N.W.2d 67 (S.D.1983).

A sound principle of law cannot be sustained by longevity but survives as authority because of its appeal to reason and the conscience of man. Jurisprudence should not be fearful of reaching into a jury room and examining a verdict arrived at contrary

---

**4.** Contrary to Federal Rule of Evidence 606(b), the juror was never permitted to testify. No evidence was taken whatsoever. Thus, appellant was precluded from establishing a record. How will you ever expose the racial prejudice of a jury unless the door is opened to hear it? A due process hearing has been stonewalled.

**5.** Jury Instruction # 6 on reasonable doubt concluded: "You should not in the consideration of this case search for a doubt, but you should in such consideration, *uninfluenced by bias, prejudice,* passion or sympathy, *at all times seek the truth.*" (Emphasis supplied.)

**6.** This is not a guarantee of inconsequence. The Sixth Amendment of the first ten amendments to the Constitution of the United States, commonly known as the Bill of Rights, was won by the blood of the patriots in the American Revolution. Without impartial jury trials, jury trials are a mockery—a farce. The majority viewpoint not only in South Dakota, but in the United States, looks at the impeachment of a jury verdict as a visionary looks at a raindrop and visualizes a flood.

**176**

to instructions in the case, instructions which strictly forbid the consideration of bias and prejudice. Justice need not recoil from a known wrong committed in the name of the law. If the majority opinion is authoritative and inviolable because of the erstwhile rubric that a jury may not impeach its verdict dating back to the common law of England and two centuries of established law in the United States, then I assert that upholding a conviction birthed by blatant prejudicial appeal in a jury room offends against the reason and conscience of man, and it is time to change the rule. Age will not fortify an inequity or legal wrong. If it did, the law would still sanction imprisonment for debt and hanging for the theft of a loaf of bread.

Racial prejudice is an exception falling clearly within Rule 606(b), *supra*. And the hour is upon the State of South Dakota to be a beacon to estop such encroachment upon fair trials.[7] For surely, under our Federal Constitution, the State of South Dakota has the power and duty to administer its own system of criminal justice. But, just as surely, each state must conform to the Due Process Clause of the Fourteenth Amendment. Appellant was not afforded due process. Abhorrent to a free society was the menacing and unreflective process by which the jury verdict was determined, announced, recorded, and upheld by the trial court. The lantern of impartiality was extinguished.

**7.** *See also, State v. McComsey,* 323 N.W.2d 889, 895 (S.D.1982) (Henderson, J., dissenting), wherein I closed by expressing: "The most critical stage of a trial is the deliberation of the jury. It is the American system of justice at work. I would not suffer it to be denigrated."