STATE, Respondent v. VAN BEEK, Appellant

(212 N.W.2d 659)

(File No. 11189. Opinion filed December 7, 1973)

Order denying petition for rehearing January 8, 1974

May, **Johnson & Burke, John C. Quaintance**, Sioux Falls, for defendant-appellant.

**Kermit Sande**, Atty. Gen., **Neil Carsrud**, Asst. Atty. Gen., Pierre, for plaintiff-respondent.

RENTTO, Associate Judge.*

The defendant was charged with the crime of burglary in the third degree involving breaking into and entering the Troff Corral in Moody County and the theft of numerous articles of personal property therefrom. On the jury's verdict finding him guilty, and after his motion for a new trial was denied, judgment was entered sentencing him to imprisonment in the state penitentiary. From that he appeals.

His principal complaint here involves a pair of overshoes and a pair of rubbers which the officers took from his premises in rural Minnehaha County, about a month after the commission of the offense in question, which he claims were illegally seized.

---

* Retired Supreme Court Judge acting by appointment pursuant to SDCL 16-8-13.

These were the basis of evidence used against him. It was the position of the prosecution that the soles of these articles of footwear were similar to footprints found on the dirt floor of the arena in the Corral following the burglary.

Over vigorous and repeated objections the state was permitted to introduce testimony describing these overshoes and rubbers and put in evidence a plaster cast made of one of the footprints found at the Corral, as well as testimony comparing the impression on it with the soles of these articles. The overshoes and the rubbers were also received in evidence. He argues that in permitting evidence concerning them the court erred to his prejudice.

When Robert Troff went to his place of business early on the morning of November 21st, 1971 he discovered that it had been broken into and that numerous items of his stock of merchandise were missing. These included four saddles and many other smaller items that he used in his business of training riding horses and had for sale to their owners. In the Corral is an arena area about 50 x 90 feet where they worked the horses. Its floor is covered with a sandy type granite dust from a nearby quarry. In this area he noticed many boot marks that were not there the previous day.

He promptly reported the burglary to Mr. Fletcher Faris, the sheriff of his county, who arrived at the Corral within a half or three quarters of an hour and measured some of the boot marks. Of one he took a plaster cast. It apparently was of a rubber. The other officers later involved in the investigation of this incident seem to have known of this cast and to have examined it. On the following day Delbert Peterson, a special agent with the State Division of Criminal Investigation, was there and took pictures of the foot tracks in the arena area. These were admitted in evidence without objection. Apparently they were of two different sets of prints.

On December 22nd, 1971 Mr. Peterson with agent Patterson of his department and Mr. Gene Gruhlke, Sheriff of Minnehaha County, accompanied the Sheriff of Lincoln County to the

defendant's farm located in Minnehaha County. They had with them a warrant for the arrest of the defendant for an offense committed in Lincoln County. They arrested him and his wife and took them to the office of the Minnehaha County Sheriff in Sioux Falls. While making this arrest they noticed some items of personal property on the premises which they believed to have been stolen in several incidents that they were then investigating.

On application made after this visit a search warrant was issued to Sheriff Gruhlke to search defendant's premises for described articles taken in burglaries of the Wheelborg Construction Company and the County Highway Shops, both in Minnehaha County. In the execution of this warrant the Sheriff and Agent Peterson found some of the articles they were searching for. In addition they saw articles that were identified as having come from burglaries in counties other than Minnehaha. On this occasion Mr. Troff accompanied by Sheriff Faris pointed out to them a saddle and several other articles in the loft of one of the buildings on defendant's premises as having been taken in the burglary of his Corral.

The next day Sheriff Gruhlke made application for a second warrant to search the premises for described articles taken in these out-of-county burglaries, including this one. Apparently he had discussed these cases with officers of those counties. In this application he relied on additional information that Mr. Troff and these other county officers had given him. In executing it the Sheriff and Agent Peterson seized numerous articles described in the warrant that had been taken in the burglary of the Troff Corral and these other burglaries. They also took possession of the overshoes and rubbers in question.

While the officers had seen the overshoes on the front porch of defendant's home and the rubbers in an inside entry way, all in plain view when they arrested defendant and his wife, and in the same locations on their other visit to the premises, they apparently did not relate them to the Troff burglary until this occasion. These were the only boots or rubbers they saw on the premises. Neither of these articles is described in the search

warrant. This is the basis for defendant's claim that the articles involved were illegally seized and consequently they and evidence about them were inadmissible.

The affidavit upon which a search warrant is issued must particularly describe the thing to be seized. Article VI, § 11 of our Constitution. This is also a requirement of the Fourth Amendment to the United States Constitution which Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081, made applicable to the States through the Due Process Clause of the Fourteenth Amendment. Before the Mapp decision it was a restriction on only the Federal Government. Consistent with our constitutional provision and implementing it, SDCL 23-15-9 provides that the warrant must command the officer to search the place named for the property specified. Our statutory form of search warrant, SDCL 23-15-10, states that the property sought be described with reasonable particularity.

Giving effect to holdings of the United States Supreme Court we said in State v. Larkin, 87 S.D. 61, 202 N.W.2d 862, that:

"It is the general rule that where a search is pursuant to a warrant, the officer making the search cannot seize property other than that which is specifically described in the warrant."

This is also the mandate of our constitutional and statutory provisions. State v. Nelson, 84 S.D. 218, 169 N.W.2d 533. The purpose of these is to avoid the evil of general searches. However, we held in Larkin that there are exceptions to the rule. The one there recognized is stated thus:

" * * * where a police officer while in the course of a lawful search pursuant to a valid search warrant inadvertently uncovers evidence of another crime."

In applying it we held that he may seize such evidence although it is not described in the warrant. In order that he may do that the original search must be directed in good faith toward finding articles described in the warrant, and he must have probable

cause to believe the inadvertently discovered evidence is in fact seizable, that is, connected with criminal behavior. For more detailed discussions of this exception see United States v. McDonnell, D.C. Neb., 315 F.Supp. 152; Bell v. State, Alaska, 482 P.2d 854; State v. Davenport, Alaska, 510 P.2d 78; Myers v. State, 60 Wis.2d 248, 208 N.W.2d 311. The restrictions with which this exception is hedged protect against general exploratory searches.

The validity of the search warrant under which the officers were proceeding is admitted and it is clear from the record that their search was in good faith directed toward finding articles described therein. So our problem is to determine whether they had probable cause to believe that the overshoes and rubbers were related to the burglary of Troff's Corral. We think they did.

In addition to finding secreted in one of the defendant's buildings many items of property that had been taken in the Troff burglary, the officers were aware of the footprints found in the arena area of the Corral the morning after it was broken into. We are satisfied that from these circumstances they could reasonably conclude that the footwear seized had probably been used in committing the burglary. The cited constitutional provisions proscribe only unreasonable searches and seizures. We concur in the trial judge's determination that in the described circumstances the taking of these articles "was a reasonable seizure". We hold that the court did not err in admitting the evidence complained of.

There is some complaint made that the sheriff's return of the warrant required by SDCL 23-15-18 does not inventory the overshoes and rubbers. That section provides that the inventory list all of the property taken "on the warrant." Since these items were not taken on the warrant they were not required to be inventoried. In any event the return of a search warrant is a ministerial act and any failure therein does not void the warrant. 79 C.J.S. Searches and Seizures § 84; 68 Am.Jur.2d, Searches and Seizures, § 83. The return is purely a question of state law, Cady v. Dombrowski, 413 U.S. 433, 93 S.Ct. 2523, 37 L.Ed.2d 706.

■ The plaster cast made of a footprint found in the Corral the morning after the burglary was not offered in evidence until after the State had rested and during the presentation of defendant's case. He suggests that in permitting such the court erred. Apparently this was an oversight by the state's attorney. It should have been put in evidence before the State rested, but the court, in its discretion, could permit it to be done later on. SDCL 23-42-6(4). See State v. Larkin, supra. In allowing that to be done here the court did not abuse its discretion.

■ He also urges that the judgment should be reversed because the State failed to prove that the crime was committed in Moody County. That there is no direct evidence it took place in that county is admitted. Why prosecutors fail to put in evidence on this necessary and almost always easily proved feature, is difficult to understand. However, Mr. Troff's testimony establishes that his place of business is located on the very east edge of Trent. That the town of Trent is in Moody County is a well known geographical fact of which the courts may take judicial notice. State v. Wood, 77 S.D. 120, 86 N.W.2d 530. Direct evidence of venue is not required. State v. Greene, 86 S.D. 177, 192 N.W.2d 712. It is sufficiently established if it is properly inferable from the evidence. We hold that it was.

Affirmed.

BIEGELMEIER, C. J., and WINANS, WOLLMAN and DOYLE, JJ., concur.

RENTTO, Associate Judge, sitting for DUNN, J., disqualified.