**STATE of South Dakota, Plaintiff and Respondent,**

v.

**Timothy W. WESTPHAL, Defendant and Appellant.**

**No. 12422.**

Supreme Court of South Dakota.

Dec. 29, 1978.

Peter H. Lieberman, Asst. Atty. Gen., Pierre, for plaintiff and respondent; William J. Janklow, Atty. Gen., Pierre, on brief.

Thomas E. Graslie, Buffalo, for defendant and appellant.

PORTER, Justice.

## CASE SUMMARY

Defendant was convicted of assault with a dangerous weapon, a .22 caliber revolver, without intent to kill, in violation of SDCL 22–18–11.[1] We hold that the evidence was

---

1. SDCL 22–18–11 provided:
   Every person who, with intent to do bodily harm and without justifiable or excusable cause, commits any assault or any assault and battery upon the person of another with any sharp or dangerous weapon or who, without

sufficient to prove that the gun allegedly used in the assault was a dangerous weapon. We therefore affirm the judgment of the trial court.

## FACTS

On May 23, 1977, at about 8:30 p. m. Boyd Pope was talking to some friends in a parking lot in Newell when defendant drove up in a black station wagon and began to converse with Pope. Pope was on his motorcycle approximately four to five feet from where defendant stopped his station wagon.

Defendant asked Pope where he could get beer and gas, and asked whether he could ride Pope's motorcycle. Pope gave defendant directions, refused to allow defendant to ride his motorcycle, and turned his back on defendant in order to talk to two friends who were in a car parked on the other side of Pope's motorcycle. When Pope turned back to defendant, defendant was pointing a small caliber pistol at Pope. Defendant told Pope to show him the way to Eagle Butte, and said that it had better be the right way. Defendant was pointing the gun at Pope as he spoke. Pope started his motorcycle and led defendant to Highway 212. Defendant followed within a few feet of Pope's motorcycle. When Pope thought he was out of gun range, he escaped from defendant on a gravel road.

After an alert was put out for defendant's vehicle, it was noticed by a highway patrolman, while the patrolman was proceeding west on Highway 212 about seventeen miles west of Faith. Defendant met the patrolman and failed to dim his lights. The patrolman turned around and followed defendant's vehicle. It was being driven erratically, and crossed the center line several times. The patrolman stopped defendant and arrested him for driving while intoxicated. In the process, the patrolman noticed a .22 caliber pistol on the front seat of defendant's vehicle, and seized it.

Defendant was taken to the city police department of Faith and incarcerated. The patrolman took bullets from the gun and placed them and the gun in an evidence bag, which he initialed. He testified that he couldn't remember exactly, but he thought there were six rounds in the gun. The bag was later given to a Meade County Deputy, who also initialed it. The deputy placed the bag in his locked trunk transported it back to Sturgis, and placed it in the Meade County Sheriff's evidence locker, where it was held for a few hours. The next morning, it was given to a Butte County Deputy, who also wrote his name, the date, and the time he received the bag on the exhibit. The Butte Deputy took it to Belle Fourche where he placed it in an evidence room to which he, the Butte County Sheriff, and the Sheriff's secretary had access. So far as the Deputy knew, the gun remained there until the morning of trial. All of these persons in the chain of custody testified that it looked as though the gun was in the same condition at trial as when they had it. There were, however, only four rounds of ammunition in the bag at the time of trial. It also appeared that the top of the evidence bag had been torn at some point.

## ISSUE

The major issue presented by this appeal is: Was the evidence sufficient to uphold the jury's determination that the gun was a dangerous weapon when used in the way that defendant used it? We hold the evidence sufficient.

## DECISION

■ Assault with a dangerous weapon under SDCL 22–18–11, as relevant to this case, had three elements: (1) that defendant assaulted Boyd Pope; (2) that the assault was committed with specific intent to

such cause shoots, or attempts to shoot at another, with any kind of firearm, air gun, or any other means, with intent to injure any person although without intent to kill such person is punishable by imprisonment in the state penitentiary not exceeding five years or by imprisonment in a county jail not exceeding one year, or by a fine not exceeding five hundred dollars or by both such fine and imprisonment.

do bodily harm; and (3) that the instrument used in the assault was a sharp or dangerous weapon. *State v. Tiedeman*, S.D., 262 N.W.2d 763, 765 (1978).

Defendant contends that the gun could not have been a dangerous weapon, since the State has not proved that the gun was loaded at the time that it was pointed at the victim.

■ We have previously held that an assault can be committed with an unloaded gun, so long as the victim had reasonable cause to believe that the gun was loaded, and was put in fear of immediate bodily injury under circumstances that would produce fear in the mind of an ordinary person. *State v. Mier*, 74 S.D. 515, 55 N.W.2d 74 (1952); *State v. Wiley*, 52 S.D. 110, 216 N.W. 866 (1927). Defendant does not seriously contend that this element is absent here. These cases do not, however, address the question of whether an unloaded gun is a dangerous weapon. Dangerous weapon is not defined in our assault statutes. Cases from other jurisdictions conflict on this question. See Anno., Fact that Gun was Unloaded as Affecting Criminal Responsibility, 79 A.L.R.2d 1412, § 6 at 1423–1426 (1961). Some of these decisions are based on statutes differing from our own. We do not find it necessary to address the question of whether an unloaded gun might not, in some circumstances, be a dangerous weapon. We believe that a statute such as ours, which does not define dangerous weapon, leaves to the jury the question of whether a specific weapon is dangerous unless the court can conclude as a matter of law that the weapon is or is not dangerous. See *United States v. Davis*, 429 F.2d 552 (8th Cir. 1970) (Applying North Dakota Statute that did not define dangerous weapon).

■ We are unable to conclude, as a matter of law, that the weapon used was not dangerous when used in the manner in which defendant used it. Defendant threatened to harm Boyd Pope if Pope did not show him the correct way to Eagle Butte, and supported his threat by pointing the gun at Pope's abdomen. His threatening manner and words indicated that he intended to harm Pope, and provide support for the proposition that the gun was loaded. The gun was designed as a weapon, and its ability to inflict injury was within the knowledge of the jury. The manner of its use made it reasonable to believe that defendant would injure Pope if Pope failed to comply with defendant's demands. Defendant by his words and actions indicated to Pope that he had a loaded gun. The jury could infer that he offered to use it for the purpose for which it was designed, that is, to fire a bullet. The highway patrolman who arrested defendant discovered that the gun was loaded when he took defendant into custody. This arrest took place within one hour after the incident, and at the approximate place where defendant would have been had he driven since the time of the assault. The highway patrolman also testified that he removed "live rounds" from the gun, that the gun was lying on the seat beside defendant, and that the gun was apparently in working order. This evidence, when taken in the light most favorable to the State, supports an inference that the instrument used in the assault was a dangerous weapon. Since we have held that this question is for the jury, and since the evidence provides sufficient support for the jury's conclusion, we may not disturb the verdict on appeal. *State v. White*, S.D., 269 N.W.2d 781 (1978).

■ The same conclusion applies to defendant's contention that the gun was not dangerous because it was not cocked. The evidence detailed above suggests that the weapon was, in fact, dangerous. The fact that the gun might not have been cocked does not significantly reduce the dangerous character of the weapon, where, as here, defendant had the apparent ability to cock and fire it at will.

■ Defendant also alleges that the chain of custody of the gun was insufficient to render it admissible. This contention is without merit. We need not consider whether the gun is admissible as readily identifiable and relatively impervious to change, *State v. Herman*, S.D., 253 N.W.2d

454 (1977), since the custody is, in any event, sufficient. The chain outlined above is complete, and strongly suggests the exact whereabouts of the exhibit at all times since it was taken from defendant. *State v. Serl*, S.D., 269 N.W.2d 785 (1978).

Defendant's final contention is that he was prejudiced by the court's instructions, because one of the instructions defined the act necessary to constitute an assault with a dangerous weapon without stating that the act had to be united with a certain specific intent. The specific intent was, however, adequately dealt with elsewhere in the instructions. When we review the propriety of instructions, we must consider them as a whole to determine whether they adequately set out the law applicable to the case. *State v. Townsend*, S.D., 231 N.W.2d 367 (1975). The instructions in this case did so. Giving them was, therefore, not reversible error.

The judgment is affirmed.

All the Justices concur.