STATE of South Dakota, Plaintiff
and Appellee,

v.

Stanley WELLNER (# 13533) and Steven
Wellner (# 13534), Defendants
and Appellants.

Nos. 13533, 13534.

Supreme Court of South Dakota.

Argued Feb. 24, 1982.

Decided April 21, 1982.

Jon R. Erickson, Asst. Atty. Gen., Pierre, for plaintiff and appellee; Mark V. Meierhenry, Atty. Gen., Pierre, on brief.

James D. Leach, Rapid City, for defendant and appellant Steven Wellner.

Bruce Ellison, Rapid City, for defendant and appellant Stanley Wellner.

DUNN, Justice.

Defendants Steven and Stanley Wellner appeal from jury verdicts finding them guilty of the crime of possession of more than one pound of marijuana. We affirm the convictions.

In the spring of 1980, George Wellner rented the Brandenburg farm near Miller, South Dakota. George and his sons, defendants, raised hay on the farm. Defendants occasionally stayed in the farmhouse.

On August 20, 1980, after receiving a tip from an informant, several law enforcement officers flew over the farm and saw several patches of growing marijuana. They obtained a search warrant and discovered about one and one-half tons of marijuana growing in two cultivated patches. The patches were surrounded by chicken wire and irrigated with water pumped through black plastic pipe which led from the dugout. Several marijuana plants were growing in black plastic pails and a roto tiller was found in one of the patches. A worn path, which led from the patches to the buildings, was noticed by the sheriff during the execution of the first search warrant.

A second search warrant was issued during the afternoon of August 20, 1980, which authorized the search of the house and the surrounding buildings for equipment used to manufacture hashish or other marijuana products. This search uncovered four cartons of black plastic pails and an empty carton. Steven Wellner's name was on each of these cartons. The black pails were identical to those found in the field. The search also uncovered an old dresser drawer, two wooden trays with 300 peat starter pots, a sprinkling can and four plastic buckets. A record book was found in the house which logged the time of planting and transplanting of the marijuana plants from the peat pots to the buckets.

At trial, evidence was introduced indicating that 450 feet of chicken wire was sold in the spring of 1980 to defendants, which wire was the same type as that found around the marijuana patches. The evidence also indicated that 1000 feet of pipe

was sold to one of the defendants and that the pipe was similar to that found leading to the marijuana, but different couplings were on the pipe. The roto tiller was sold to Stanley Wellner in the spring of 1980.

Defendants contend that the evidence seized by the law enforcement officers under the second search warrant should have been suppressed because the affidavits in support of the search warrant were insufficient to meet the requirements for a showing of probable cause. We disagree.

 In the context of search warrants, probable cause is defined as "the existence of facts and circumstances as would warrant an honest belief in the mind of a reasonable, prudent man acting on all the facts and circumstances within the knowledge of the magistrate that the offense has been, or is being committed and that the property sought exists at the place designated." *State v. Robinette*, 270 N.W.2d 573, 577 (S.D.1978) (emphasis omitted). *See also State v. Smith*, 281 N.W.2d 430 (S.D. 1979). In reviewing the affidavits, we must remember that the search warrant should not be invalidated by interpreting the affidavits in a hypertechnical manner; rather, we should read each affidavit as a whole and interpret each in a common sense and realistic manner. *State v. Smith, supra; State v. Clark*, 281 N.W.2d 412 (S.D.1979); *State v. Kaseman*, 273 N.W.2d 716 (S.D. 1978). "The resolution of a marginal showing of probable cause on an affidavit should be largely determined by the preference to be accorded to warrants." *State v. Clark*, 281 N.W.2d at 414. Thus, every reasonable inference possible should be drawn in support of the magistrate's determination of probable cause. *State v. Smith, supra; State v. Clark, supra.*

The second search warrant authorized the search of the house and all other buildings on the real estate in question for any and all equipment used in the manufacture of hashish or other substance derived from the marijuana plant. The magistrate issued the search warrant based on the affidavits of the Hand County Sheriff and an agent of the South Dakota Division of Criminal In-

vestigation (DCI). The sheriff's affidavit contained the following information: that he personally observed two patches of cultivated marijuana plants; he saw buckets and a sprinkler "situated" near the plants for watering purposes; he believed several tons of marijuana were growing in these patches; he saw a well-worn path between the buildings and the two patches; he saw a green van registered to Steven Wellner and a red pickup registered to Stanley Wellner; he saw the air conditioner for the house running; that there is probable cause to believe that defendants were residing in the house; and "[t]hat considering the huge amounts of cultivated marijuana plants discovered and seized, [he] believes that the buildings ... could contain equipment used in the manufacture of hashish or other substance derived from the marijuana plant[.]" The affidavit incorporated by reference affidavit of a DCI agent, which was the basis for the granting of the first search warrant to search the real estate and seize any and all growing marijuana plants. This affidavit alleged the existence of large quantities of marijuana on the real estate.

 Defendants allege that the affidavits were insufficient to support the finding of probable cause, because they were based solely on suspicions which did not amount to probable cause for the issuance of a search warrant. *State v. Robinette, supra.* The sheriff's affidavit stated that the buildings *could* contain equipment used to manufacture hashish rather than stating that the equipment would be found in the buildings or that there was probable cause to believe that equipment would be found in the buildings. The affidavit, however, indicated that several tons of marijuana were found growing on the real estate, buckets and an irrigation system which were used to water the marijuana were found, and a well-worn path was noticed going from the patches to the buildings. It was reasonable for the magistrate to infer that the producer of several tons of marijuana would also have equipment in the buildings to manufacture marijuana products. The information before the magistrate was sufficient to

show the probability of criminal activity and that the property sought existed in the buildings in question.

Following a suppression hearing, the trial court ruled admissible numerous items seized under the second warrant. The State was allowed to introduce into evidence: one two-gallon sprinkling can and four five-gallon plastic buckets found inside the barn; two wooden trays with 300 peat starter pots and one dresser drawer found outside the barn; and four cartons of five-gallon plastic utility buckets and one empty carton which were found in the machine shed. The cartons had Steven Wellner's name on them. Additionally, the State introduced into evidence a record book seized from the house. Defendants contend that these items were not admissible under the plain view exception. The trial court held that defendants had standing to challenge the search of the house, but they did not have standing to invoke the exclusionary rule with regard to the search of the grounds and buildings adjacent to the dwelling house. We disagree.

■ In *Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978), the United States Supreme Court established a test for determining standing to dispute a search and seizure. The test is whether government officials violated any legitimate expectation of privacy held by the defendant. *See also United States v. Salvucci*, 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980); *Rawlings v. Kentucky*, 448· U.S. 98, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980); and *State v. Thomale*, 317 N.W.2d 147 (S.D.1982). In defining the scope of that interest, the Court stated that "arcane distinctions developed in property and tort law between guests, licensees, invitees, and the like, ought not to control." *Rakas v. Illinois*, 439 U.S. at 143, 99 S.Ct. at 430, 58 L.Ed.2d at 401. The Court recognized, however, that "[l]egitimation of expectations of privacy by law must have a source outside of the Fourth Amendment, either by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society." 439 U.S. at 143–44,

n. 12, 99 S.Ct. at 430–31, n. 12, 58 L.Ed.2d at 401, n. 12. *See also State v. Thomale, supra.*

In determining whether a defendant has a legitimate expectation of privacy in the searched area, a number of factors should be considered. In *Rakas v. Illinois, supra*, the Court examined whether the petitioner had the right to exclude access to other persons from the searched area. *See also Rawlings v. Kentucky, supra.* In *Rawlings, supra*, the Court also examined whether the petitioner had sought or received access to the searched area prior to the placement of the seized items there and whether the petitioner took normal precautions to maintain his privacy.

■ In the present case, the Brandenburg farm is in an isolated location in the country with no other dwellings in the immediate vicinity. There is only one access road to the farm and the gate on the access road was closed when the police arrived to execute their first search warrant. The house and adjacent buildings, including the barn and machine shed, are surrounded by a grove of trees. George, the father of defendants, leased the farm from Larry Brandenburg. George did not do any of the farm work on the Brandenburg farm, however, and assigned most of this work to defendants. Brandenburg gave defendants permission to stay in the house and to plant a garden on the property. Brandenburg authorized George to use the adjacent buildings and grounds.

The State contends that, since Larry Brandenburg stored and hauled grain from the quonset building during the summer, defendants did not have an expectation of privacy in the buildings adjacent to the house. Defendants need not have exclusive access to the searched area, however, to show that they could exclude others from it. *See Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); *Mancusi v. DeForte*, 392 U.S. 364, 88 S.Ct. 2120, 20 L.Ed.2d 1154 (1968).

All the physical attributes of the house and the adjacent buildings bespeak expectations of privacy. The buildings are

screened by trees and they are located in an isolated, rural area with entry provided by a single gated access road. Defendants had permission to live in the house and it can be implied that they had permission to use the adjacent buildings, since George did not participate in the farm work. We find that the trial court erred in determining that defendants did not have a legitimate expectation of privacy in the adjacent buildings. This is not reversible error, however, in light of our ultimate holding on the plain view exception.

Defendants contend that the search under the second warrant was not conducted in good faith toward finding the articles described in the search warrant and, therefore, the items seized should not have been admissible under the plain view exception. We disagree.

■ Generally, where a search is pursuant to a warrant, the officer making the search cannot seize property other than that which is described with specificity in the warrant. *State v. Watkins*, 89 S.D. 661, 237 N.W.2d 14 (1975); *State v. Van Beek*, 87 S.D. 598, 212 N.W.2d 659 (1973); *State v. Larkin*, 87 S.D. 61, 202 N.W.2d 862 (1972). We have recognized and applied certain exceptions to the rule, however. One exception arises "where a police officer while in the course of a lawful search pursuant to a valid search warrant inadvertently uncovers evidence of another crime. In such a case, the police officer may seize the evidence although it is not described in the warrant." *State v. Larkin*, 87 S.D. at 64–5, 202 N.W.2d at 864.

■ In cases recognizing this exception, we have emphasized that before such a seizure will be lawful, the original search must be directed in good faith toward finding objects described in the search warrant. In addition, the police officer must have probable cause to believe the inadvertently discovered evidence is in fact seizable. *State v. Watkins, supra; State v. Van Beek, supra; State v. Larkin, supra.*

■ Special DCI Agent Jerry Lindberg seized the items in question. He testified at the suppression hearing that he was looking for "anything related to the production of marijuana, its growth, modification for use . . ." and for items used in the "modification of the plant after it's grown." The items seized from the barn were sitting in the middle of the floor of the barn or just outside the door to the barn. The buckets and boxes were sitting in the middle of the machine shed. The seizing officer had probable cause to believe these items were evidence of criminal activity. These items were in plain view and the seizing officer was acting in good faith when he inadvertently discovered the items. We hold that the trial court correctly admitted these items into evidence.

Under the plain view doctrine, defendants object to the introduction of a record book, and especially a page of the book which gave directions for potting the marijuana plants. The book was found in plain view on a counter in the kitchen during the search under the second search warrant. The second search warrant called for a search for "any and all equipment used in the manufacture of hashish or other substances derived from the marijuana plant." The investigating officer flipped open the record book to the second page. This was the only page having any writing on it, except for a shopping list on the last page of the book. Here, he found the incriminating notations as to the potting and caring for the marijuana plants.

Under the plain view doctrine, a number of courts have upheld a limited perusal of the documents for the purpose of uncovering the relevance of the documents to criminal activity. *See United States v. Ochs*, 595 F.2d 1247 (2d Cir. 1979), where index cards, bank books, and notebooks relating to the crimes of prostitution and loansharking were discovered during a search for stolen travelers' checks; *Mapp v. Warden, N. Y. State Corr. Inst., etc.*, 531 F.2d 1167 (2d Cir. 1976), rent receipts were discovered in a drawer during a search for narcotics; *United States v. Damitz*, 495 F.2d 50 (9th Cir. 1974), yellow notebook which recorded a list of weights of marijuana bricks was discov-

ered during a search for marijuana and paraphernalia for packaging marijuana; and *United States v. Salmasian,* 515 F.Supp. 685 (W.D.N.Y.1981), papers supposedly recording cocaine transactions seized during a search for cocaine. This court has upheld an examination of mens' clothing found in plain view to the extent of finding price and size tags on them under a warrant authorizing search for four cartons of Contac cold capsules, *State v. Larkin, supra* ; and the shaking of a film canister found in plain view to determine whether film was contained therein, *State v. Anderson,* 316 N.W.2d 105 (S.D.1982).

■ We feel that a limited inspection was not only justified but, further, that the failure to do so would have been a dereliction of duty. We must remember the condition under which the search was made. Two patches containing upwards of one and one-half tons of marijuana had just been discovered, pursuant to the first search warrant. A second warrant had been obtained to search the buildings, which were a few hundred yards away from the patches with a well-traveled path in between. Further evidence connecting the buildings with the growing marijuana was found in plain view in and around the buildings. Under these circumstances, the finding of a record book in plain view warranted a limited inspection for further evidence of the criminal activity which had already been discovered. See, *e.g., United States v. Ochs, supra; Mapp v. Warden, supra.*

The real thrust of the defense argument is that the officer had no authority to open an innocent looking record book found in plain view during a good-faith search for evidence of the processing of the marijuana found growing in the field. However, under these facts, it had ceased to be an innocent-looking record book. It was a record book found in plain view in the midst of an extensive marijuana operation.

It does not seem illogical to this court that a record book found in the midst of criminal activity might have some *record* of criminal activity contained therein. We hold that the seizure and subsequent admission of the record book into ˙evidence was not error.[1]

Defendants claim the trial court erred in refusing to change the place of trial from Hand County. The motions for change of venue were based on allegations of community prejudice against defendants. In support of the motion, copies of news articles about the case were filed and Diane Wiley, who conducted a public opinion survey, testified that the survey indicated that a fair and impartial jury could not be impaneled in Hand County.

■ A change of venue may be ordered by the trial court if it appears that a fair and impartial jury cannot be had in the county where the prosecution is pending. SDCL 23A–17–5; *State v. Reiman,* 284 N.W.2d 860 (S.D.1979). The test is whether there is, in fact, prejudice in the minds of the county residents sufficient to raise a

1. Defendants rely on *Walter v. United States,* 447 U.S. 649, 100 S.Ct. 2395, 65 L.Ed.2d 410 (1980), to support their argument that the officer did not have the authority to examine the contents of the record book without a warrant. In *Walter,* a shipment of several securely sealed packages containing films depicting homosexual activities was mistakenly delivered to a third party. Employees of the third party opened each of the packages and discovered film boxes covered with suggestive drawings, and tried unsuccessfully to view portions of the film by holding it up to the light. The Federal Bureau of Investigation (FBI) was notified and its agents seized the packages. Thereafter, the agents viewed the films with a projector without first obtaining a˙ warrant. The United States Supreme Court in a plurality decision held that the fact that FBI agents were lawfully in possession of the film did not authorize them to search its contents. In reaching this conclusion, however, the Court recognized a distinction "between what is intended to be kept free from inspection, such as letters, and sealed packages . . . and what is open to inspection, such as newspapers, magazines, pamphlets, and other printed matter, purposely left in a condition to be examined." 447 U.S. at 654–55, n. 5, 100 S.Ct. at 2400, n. 5, 65 L.Ed.2d at 416, n. 5. In the case before us, the record book was sitting on the counter open to inspection. It was not sealed or packaged, nor was a projector necessary to view the contents of the record book. We do not find *Walter v. United States* persuasive to the facts before us.

reasonable apprehension that the accused will not receive a fair and impartial trial in the county. *State v. Reiman, supra; State v. Meservey*, 53 S.D. 60, 220 N.W. 139 (1928). The burden of establishing that a fair and impartial trial cannot occur in such county is upon the applicant. *State v. Reiman, supra; State v. Austin*, 84 S.D. 405, 172 N.W.2d 284 (1969). A change of venue shall be granted at the discretion of the trial court, and we will reverse that decision only for abuse of discretion. *State v. Reiman, supra; State v. Kingston*, 84 S.D. 578, 174 N.W.2d 636 (1970); *State v. Austin, supra.*

The pretrial publicity of the case was primarily factual reporting and was not inflamatory in nature. The news media did not express an opinion concerning its view of the guilt or innocence of defendants. Defendants made no showing that this pretrial coverage was inaccurate, misleading or unfair. *See State v. Reed*, 313 N.W.2d 788 (S.D.1981). The survey indicated that ninety-nine percent of those interviewed had heard of the incident. We have held, however, that "qualified jurors need not be ignorant of facts and issues and that the existence of pretrial publicity alone is not enough to deny a defendant a fair trial." *State v. Reiman*, 284 N.W.2d at 868; *Murphy v. Florida*, 421 U.S. 794, 95 S.Ct. 2031, 44 L.Ed.2d 589 (1975). The survey also indicated that sixty-two percent of those interviewed believed defendants were probably guilty. We realize that some residents of Hand County may harbor bias or prejudice against defendants and they must be precluded from becoming jurors. Defendants, however, exercised only one peremptory challenge during voir dire and thus failed to show that the community bias or prejudice could not adequately be exposed and remedied during voir dire.[2]

▌ The test under our rulings is whether there is, in fact, prejudice in the minds of the county residents sufficient to raise a reasonable apprehension that the accused cannot receive a fair and impartial trial in the county. *State v. Reiman, supra; State v. Meservey, supra.* Had this case come to us in the posture of defendants' exhausting their peremptory challenges with jurors still on the panel who had indicated a pretrial bias, followed by a refusal of the motion to change the place of trial, the result would undoubtedly be different. While the stipulation preserved defendants' right to contest the trial court's denial of their motion to change the place of trial on the basis of the evidence in the survey or undue pretrial publicity, they could not preserve the ultimate issue of whether any bias or prejudice indicated by the polls or publicity could be adequately corrected by voir dire, because they accepted the jury after exercising only one peremptory challenge. We hold that defendants failed to meet their burden of proving that a fair and impartial trial could not occur in Hand County.

▌ Defendants contend that the trial court erred in instructing the jury on the meaning of possession. We disagree. The questioned instruction states:

A person is in possession of marijuana if the marijuana is subject to his dominion or if he exercised control over it or if he had the right to exercise control over it. Possession need not be exclusive. The possession may be shared with others. A defendant must be shown to have been intentionally and consciously in possession of the marijuana.

The mere fact that a person is near a location or has access to the place where marijuana is found is not, by itself, sufficient proof of possession.

Defendants claim that this instruction erroneously eliminated the requirement of exclusive possession where they have shown that people other than defendants had access to the marijuana patches. In *State v. Kietzke*, 85 S.D. 502, 186 N.W.2d 551 (1971), the defendant and a number of other persons were smoking marijuana and hashish in an apartment. A number of people came

and left the apartment and had access to the marijuana during the evening. In affirming the conviction of defendant, we stated that "the accused must be shown to have been aware of the presence and character of the drug and to have been intentionally and consciously in possession of it. However, the possession need not be exclusive. It may have been shared with others." 85 S.D. at 506, 186 N.W.2d at 554. We find the holding in *Kietzke* persuasive and hold that the trial court properly instructed the jury that possession need not be exclusive.

■■■■ Defendants also claim that this instruction allowed them to be convicted based solely on the right to exercise control over the marijuana. If the jury instructions as a whole adequately set forth the applicable law, defendants have not been prejudiced. *State v. Gallegos*, 316 N.W.2d 634 (S.D.1982); *State v. Westphal*, 273 N.W.2d 155 (S.D.1978). The instruction in question also states that "the mere fact that a person is near a location or has access to the place where the marijuana is found is not, by itself, sufficient proof of possession." The jury, under this instruction as a whole, could not have convicted defendants based solely on their presence on the Brandenburg farm and their right to control the premises. The trial court properly submitted this instruction to the jury.

Defendants contend that the trial court erred in refusing to order the State to disclose the identity of an informant. The informant told Agent Lindberg that he observed growing marijuana on the Brandenburg farm and that defendants were living in the dwelling place on the premises. Defendants claim that the informant might have been able to testify that he had not seen them cultivating the marijuana.

■■■■ "In order to prevail, defendant must show that he was hindered in presenting a defense at trial by refusal to disclose the informant's identity." *State v. James*, 286 N.W.2d 534, 536 (S.D.1979). The public's interest in protecting the flow of information must be balanced against the individual's right to prepare his defense.

Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony and other relevant factors. *Roviaro v. United States*, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957); *State v. Wiley*, 295 Minn. 411, 205 N.W.2d 667 (1973); *State v. Wenzel*, 196 Neb. 255, 242 N.W.2d 120 (1976).

■■■■ In the case before us, there is no showing that the informant actively participated in growing the marijuana or that he was present when the marijuana was being cultivated. At the most, the informant might have been able to testify that he did not see defendants cultivating the marijuana at the time he observed the marijuana patches. From this testimony, defendants speculate that the jury might infer that they did not have possession of the marijuana. The significance of this testimony is insufficient to override the public's interest in protecting the flow of information. The trial court was correct in refusing to order the State to disclose the identity of the informant.

■■■■ Defendants contend that the trial court erred in not granting their motion for judgment of acquittal because of insufficiency of the evidence. We disagree. When ruling on a motion for judgment of acquittal, the trial court must consider the evidence in the light most favorable to the nonmoving party and give the nonmoving party the benefit of all reasonable inferences in their favor. *State v. Gallegos, supra; State v. Vogel*, 315 N.W.2d 321 (S.D.1982). A motion for judgment of acquittal is properly denied if the State has introduced evidence upon which, if believed by the jury, they may reasonably find the defendant guilty of the crime charged. *State v. Miller*, 313 N.W.2d 460 (S.D.1981); *State v. Myott*, 246 N.W.2d 786 (S.D.1976). The State may prove all elements of a crime with circumstantial evidence. *State v. Wilson*, 297 N.W.2d 477 (S.D.1980).

The State introduced evidence that a large quantity of marijuana was being cultivated on the Brandenburg farm; that defendants at times lived in the house on the property; and that defendants purchased black plastic buckets, irrigation pipe, chicken wire and a roto tiller similar to the items used to cultivate the marijuana. In addition, the black plastic buckets found in the machine shed with Steven Wellner's name on the carton were identical to the buckets found in the field. The record book found in the house logged the planting and transplanting time of the marijuana plants from peat moss cups to the buckets. The evidence submitted by the State was sufficient to find defendants guilty of the crime of possession of more than one pound of marijuana and the trial court was correct in submitting the issue to the jury.

We affirm the judgment of the trial court.

MORGAN and HENDERSON, JJ., concur.

WOLLMAN, C. J., concurs in part and dissents in part.

FOSHEIM, J., dissents.

WOLLMAN, Chief Justice (concurring in part, dissenting in part).

I join in all of the majority opinion except that portion which holds that defendants had a legitimate expectation of privacy in the buildings adjacent to the farmhouse. I read the authorities cited in the majority opinion as supporting the trial court's determination, based upon the totality of the facts, that defendants had no such legitimate expectation of privacy in those buildings.

FOSHEIM, Justice (dissenting).

The warrant authorized the search of the house and all buildings on the described real estate "for any and all equipment used in the manufacture of hashish or other substance derived from the marijuana plant." This is exactly the type of warrant found so pernicious by our Founding Fathers who required that search warrants particularly describe the items to be seized.[1]

The requirement that warrants shall particularly describe the things to be seized makes general searches under them impossible and prevents the seizure of one thing under a warrant describing another. As to what is to be taken, nothing is left to the discretion of the officer executing the warrant.

*Marron v. United States*, 275 U.S. 192, 196, 48 S.Ct. 74, 76, 72 L.Ed. 231 (1927); *Payton v. New York*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980); *Walter v. United States*, 447 U.S. 649, 100 S.Ct. 2395, 65 L.Ed.2d 410 (1980). Here the items returned were obviously seized at the discretion of the searchers. It is impossible to match up the "Receipt, Inventory of Property Seized," attached to the returned warrant, with anything particularized in the warrant because nothing is particularized in the warrant.

Since the law enforcement officers were operating pursuant to a general search warrant, and therefore not lawfully on the premises, the plain view doctrine does not apply to this case. *Harris v. United States*, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968).

---

1. U.S.Const. amend. IV, reads in part: "[N]o Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

S.D.Const. art. VI, § 11, reads in part: "[N]o warrant shall issue but upon probable cause supported by affidavit, particularly describing the place to be searched and the person or thing to be seized."