**STATE of South Dakota, Plaintiff and Appellee,**

v.

**Glenn SMITH, Defendant and Appellant.**

**No. 13926.**

Supreme Court of South Dakota.

Considered on Briefs Oct. 27, 1983.

Decided Feb. 22, 1984.

Mark Smith, Asst. Atty. Gen., Pierre, Barbara Jo Anderson, Legal Intern, Pierre, for plaintiff and appellee; Mark V. Meierhenry, Atty. Gen., Pierre, on brief.

Bette Bunker Richards, Dakota Plains Legal Services, Batesland, for defendant and appellant.

FOSHEIM, Chief Justice.

Glenn Smith (appellant) was convicted on two counts of third degree burglary and two counts of grand theft. We affirm.

The Coast-to-Coast store in Martin, South Dakota was broken into on the morning of February 9, 1982. Entry was made through a heat duct on the roof of the building. Footprints in fresh snow led from the roof of the store to a two-family dwelling. The upstairs of the building was occupied by a family and the basement by appellant. The house has a common entryway leading to both apartments. After following the footprints to the residence at Dorothy Street, one of the officers maintained surveillance while the other went to secure a search warrant.

Although the address of the house under surveillance was 407 Dorothy Street, the search warrant listed it as 401 Dorothy Street. Deputy Rolfe's affidavit for the search warrant consistently referred to the residence as 401 Dorothy Street.* He testified the mistake occurred because the house number, as affixed to the garage, looked like a 1 rather than a 7.

■ The application and affidavit in support of the search warrant otherwise accurately described the general location of the house and the names of the residents. Reference to houses by the names of the occupants is common in Martin, a rural community of about 1,000 people. Actually, numbering houses was a recent innovation.

Armed with the search warrant, the officers entered the residence at 407 Dorothy Street and proceeded to the basement apartment. They knocked twice on the door to the apartment. Upon receiving no response, they forcibly entered the apartment by kicking open the door. They found some of the items known to be missing from the Coast-to-Coast store in appellant's bedroom. Appellant was in the apartment at the time and was arrested. No entry or search of the upper apartment occurred.

Appellant moved to suppress the evidence obtained during the search. The trial court ruled the search warrant was valid. Reversible error is claimed because the search warrant failed to state the correct street address and the apartment to be searched.

■ Article VI, § 11 of the South Dakota Constitution provides that "no warrant shall issue but upon probable cause supported by affidavit, particularly describing the place to be searched and the person or thing to be seized." *See also* U.S. Const. amend. IV. These safeguards should be given a reasonable interpretation. *State v. Wellner*, 318 N.W.2d 324 (S.D.1982).

■ Consequently, searches conducted on warrants bearing incorrect addresses have not been condemned outright. A search warrant issued for 260 27th Avenue rather than 262 27th Avenue was upheld where the officer discovered that 260 27th Avenue did not exist and reasoned that the informant had misread 262 as 260 because an accumulation of dirt, running paint, and corrosion around the house numbers ob-

---

* The affidavit stated in part:
 We followed the footprints north along the footpath. The footprints left the footpath in an easterly direction near the residence at 401 Dorothy Street and were followed to the residence at 401 Dorothy Street. The footprints appeared to enter the front porch door at 401 Dorothy Street. The upstairs of 401 Dorothy is believed to be occupied by the James Hinek family and the basement by Glen [sic] Smith and one of the sons of Olive Burke.

scured the last digit. *State v. Rood,* 18 Wash.App. 740, 573 P.2d 1325 (1977). *Rood* listed

> three general sources of information that may be considered in determining whether the premises to be searched are sufficiently identified, absent a correct street address, to enable the officers to locate them with certainty. Those are: (1) other physical descriptions of the premises contained in the warrant or affidavit, *State v. Trasvina,* [16 Wash.App. 519, 557 P.2d 368 (1976) ]; (2) information concerning the location of the premises based upon the officer's personal knowledge of the location of the premises or its occupants, *State v. Davis* [165 Wash. 652, 5 P.2d 1035 (1931) ]; *State v. Andrich,* 135 Wash. 609, 238 P. 638 (1925); and (3) the personal observations of the officer or officers at the time the warrant is executed. This latter source is recognized in *Steele v. United States,* [267 U.S. 498, 45 S.Ct. 414, 69 L.Ed. 757 (1925) ], with its pronouncement that the description suffices if the officer can "with reasonable effort" ascertain and identify the place intended.

*Id.* at 1328. We approve use of such sources of information to validate an otherwise incorrect search warrant. *See also United States v. Prout,* 526 F.2d 380 (5th Cir.1976); *United States v. Bedford,* 519 F.2d 650 (3rd Cir.1975).

■ The facts in this case support all three sources expressed in *Rood.* The information in the affidavit set forth the location and description of the dwelling and the names of its occupants. The evidence shows that local residents and particularly law enforcement officers knew where everyone lived in the community. This personal knowledge on the part of the officers permitted them to ascertain the intended premises with certainty solely on the basis of the search warrant and supporting affidavit. Additionally, the personal observations of the investigating officers who discovered footprints leading through the snow from the crime scene to the door of the residence and the continued presence of one officer at the residence while the other obtained the search warrant safeguarded against entering the wrong place. The search warrant therefore does not fail for particularity.

■ In *State v. Kaseman,* 273 N.W.2d 716 (S.D.1978), we addressed the question whether "particularly" modifies the word "warrant" or the word "affidavit" in Article VI, § 11 of our state constitution. We there held that search warrants must particularly describe the place to be searched and the person or thing to be seized and affidavits supporting those search warrants need not particularly describe the place, person, or thing but must contain a showing of probable cause. Here we have the converse situation of an inaccurate warrant supported by a detailed affidavit. We now confirm that a search warrant must particularly describe the place to be searched, but that requirement is satisfied if the circumstances surrounding the execution of the warrant are such that the officer can, with reasonable effort, ascertain and identify the place intended to be searched. *See Steele v. United States, supra.*

■ Appellant also contends that the search warrant was inadequate because it did not designate the apartment to be searched. We disagree. A lawful search of fixed premises generally extends to the entire area in which the objects of the search may be found and is not limited by the possibility that separate acts of entry or opening may be required to complete the search. *United States v. Ross,* 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982). Consequently, where probable cause exists which supports the issuance of a warrant for an entire building, the warrant is valid. *State v. Ellis,* 263 S.C. 12, 207 S.E.2d 408 (1974); Annot. 11 A.L.R.3d 1330, § 7 (1967). The trail of footprints that led from the Coast-to-Coast Store to the common entry of the residence at 407 Dorothy placed the entire residence under suspicion.

■ We do not mean to say, of course, that one search warrant may be used in all

cases to justify the search of all living units in a multiple-residence structure, for in most situations probable cause would not exist for such a blanket authorization and thus the warrant would not pass constitutional muster. *See, e.g., United States v. Votteller,* 544 F.2d 1355 (6th Cir.1976); *United States v. Gusan,* 549 F.2d 15 (7th Cir.1977); *United States v. Higgins,* 428 F.2d 232 (7th Cir.1970); *United States v. Hinton,* 219 F.2d 324 (7th Cir.1955). When considered in the light of the totality of the circumstances, however, we do not view the warrant in the instant case as being beyond the pale of particularity. There were only two living units within the structure located at 407 Dorothy Street. There apparently was no separate entry dedicated to each apartment. The probable cause to believe that the fruits of the break-in were in the structure was overwhelming. The possible intrusion upon the privacy of the occupants of both units was thus reasonable within any fair interpretation of the Fourth Amendment. In a word, we must draw a distinction between the warrant in the instant case and one that would purport to authorize a search of all units in a large apartment complex based upon tracks leading to the front door of the complex. That distinction made, the ghost of seriatim kick-ins is laid.

 Finally, appellant argues that the court should have given South Dakota Pattern Jury Instruction 2–14–6 in place of instruction 1–12–2. South Dakota Pattern Jury Instruction 2–14–6 addresses the effect of intoxication on the ability to form intent. The trial court was warranted in refusing the instruction, for there is no evidence in the record which suggests that defendant was under the influence of alcohol when he committed the crime. There was some evidence indicating that appellant had been drinking excessively during the recent past. There was no evidence, however, pointing to intoxication on the night of the crime. A trial court need not instruct on matters that find no support in the evidence. *State v. Chamley,* 310 N.W.2d 153 (S.D.1981).

Affirmed.

WOLLMAN, DUNN and MORGAN, JJ., concur.

HENDERSON, J., dissents.

HENDERSON, Justice (dissenting).

The affidavit and search warrant "particularized" the wrong address of a house. I would not reverse on this singular basis. Additionally, the search warrant failed to describe the place to be searched with particularity in that it failed to designate which apartment was to be searched. There were two separate abodes within the apartment house (Hinek family upstairs and appellant with roommate downstairs) and the officers kicked in the door on the basement apartment. Shades of the American Revolution.

If authorities may legally "particularize" an entire apartment house with one address (i.e., employing a correct address, which was not the case here), can authorities systematically kick in doors until the stolen goods are ultimately found? I would think not. You see, the first door might not be the correct door. I am opposed to this type of constitutional justice.

The inquiring legal mind conjures a host of domestic intranquilities arising from the decision of this Court: door desecrations in a long hallway in an apartment house, furor over doors being kicked in, startled people, screams in the night, bedlam. We begin with the Fourth Amendment to the United States Constitution and Article VI, § 11 of the South Dakota Constitution providing "no warrant shall issue but upon probable cause supported by affidavit, *particularly describing the place to be searched* ...." (Emphasis supplied.) And recognizing that the premises searched must be described with reasonable certainty, we end up here with documents which do not describe the apartment to be searched. The search warrant expresses: "YOU ARE THEREFORE commanded to search the residence at 401 Dorothy Street

...." There were two residences, not one, at 407 Dorothy Street. It also provided: "You may serve this warrant on Sunday." An individual's constitutional rights should not be dependent upon the size of his community. True, Martin is a rural community. I envision an application of this decision to apartment houses in larger cities in this state and I foresee trouble in its application, if not tumult. For cases supporting my viewpoint, *see People v. Royse,* 173 Colo. 254, 256, 477 P.2d 380, 381 (1970); *State v. Lee,* 247 La. 553, 172 So.2d 678 (1965); *United States v. Diange,* 32 F.Supp. 994 (W.D.Pa.1940); *Bryson v. State,* 59 Okl.Cr. 130, 56 P.2d 1198 (1936); *Thompson v. State,* 198 Ind. 496, 154 N.E. 278 (1926).

In essence, illegally seized evidence contrary to the Federal Constitution is inadmissible in a criminal trial in a state court regardless of the relevancy and trustworthiness of the seized evidence as an item of proof, *Mapp v. Ohio,* 367 U.S. 643, 655, 81 S.Ct. 1684, 1691, 6 L.Ed.2d 1081, 1090 (1961); the exclusionary rule was fashioned as a sanction to redress and to deter overreaching government conduct prohibited by the Fourth Amendment, i.e., kicking down the doors in an apartment house. Under the reasoning of the majority opinion, if the officers had the right to kick in the door of the basement apartment, they had the right to kick in the upstairs door.

The majority's reliance on *United States v. Ross,* 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982), is misplaced. *Ross,* 456 U.S. at 800, 102 S.Ct. at 2159–60, dealt with the search of an automobile trunk. This case deals with the search of an apartment house. The law applicable to constitutional protection against unreasonable searches and seizures which extends to searches of automobiles, cannot carte blanche, be engrafted upon the home of a citizen.

I fail to perceive how the *Kaseman* case, cited by the majority, is authority for the majority's ultimate holding. *Kaseman* buttresses my position that search warrants must describe with particularity that which is to be searched. In *Kaseman,* the search warrant gave the exact location of defendant's automobile.

The *Wellner* cite in the majority opinion is inapposite. *Wellner* addressed a concern of reviewing affidavits upon which search warrants are based. We stated the reviewing court "should read each affidavit as a whole and interpret each in a common sense and realistic manner." *Wellner,* 318 N.W.2d at 327. This statement does not negate the constitutional mandate to particularly describe the place to be searched in a warrant. *State v. Ellis,* 263 S.C. 12, 207 S.E.2d 408 (1974), cited by the majority is distinguishable; factually, there was *a* residence at 88 Columbus Street, City of Charleston, State of South Carolina; here, there are two separate residences at 407 Dorothy Street, Martin, South Dakota. In this case, the house may very well have structurally enjoyed a common entryway leading to both apartments but each apartment had a separate door shielding it with privacy. My tenet is that a man's castle, in an apartment house, begins at his apartment door. This South Dakota house was a duplex and the tenants therein should be accorded the same constitutional rights as a "multiple-residence" structure. There can be no realistic distinction, in law, between a one-family dwelling, a duplex, a multiple-residence structure, or a large apartment house with many apartments. Indeed, each apartment dweller has a legitimate expectation of privacy. His apartment is his home. The general rule in the United States, as I understand it, is that a general search warrant for an entire building or floor of a building occupied by different families or different tenants is void. *See* W. LaFave, *Search and Seizure* § 4.5(b) at 78 (1978). W. Ringel, *Searches & Seizures, Arrests and Confessions* § 5.5(b) at 5–17 (1983), provides: "A search warrant for an apartment building or other multiple occupancy dwelling will be struck down unless the warrant particularizes the apartment or subunit of the dwelling to be searched." The majority opinion would carve out an exception (duplex) under the facts here presented. I would not.

Federal courts have consistently held that the Fourth Amendment's requirement that a specific "place" be described when applied to dwellings refers to a single living unit (the residence of one person or family). Thus, a warrant which describes an entire building when cause is shown for searching only one apartment is void. *United States v. Barkouskas*, D.C. [Pa.], 38 F.2d 837; *United States v. Diange*, D.C. [Pa.], 32 F.Supp. 994; *United States v. Chin On*, D.C., [Mass.], 297 F. 531; *United States v. Innelli*, D.C. [Pa.], 286 F. 731; *United States v. Mitchell*, D.C. [Cal.], 274 F. 128. The basic requirement is that the officers who are commanded to search be able from the "particular" description of the search warrant to identify the specific place for which there is probable cause to believe that a crime is being committed. This requirement may be satisfied by giving the address of the building and naming the person whose apartment is to be searched. *Kenney v. United States*, 81 U.S.App.D.C. 259, 157 F.2d 442; *Shore v. United States*, 60 App.D.C. 137, 49 F.2d 519.

*United States v. Hinton*, 219 F.2d 324, 326 (7th Cir.1955). In *Hinton*, the address named in the search warrant was an entire apartment building, the basement, and each of the three upper floors thereof which constituted separate residences. The *Hinton* Court held the warrant invalid for want of particularity and expressed that searching two or more apartments in the same building was no different than searching two or more completely separate houses. Probable cause, stated *Hinton*, must be shown for searching each house or each apartment. Where the majority leaves the body of American Constitutional Law is here: The footprints led to the single entrance way and the officers obviously could not ascertain what person or persons went into the duplex and then into one of the two apartments; the affidavit could not, and did not, identify the apartment where the fruits of the crime were cached. For as the *Hinton* Court stated: "A single warrant may cover several different places or residences in a single building. But probable cause must be shown for searching each residence unless it be shown that, although appearing to be a building of several apartments, the entire building is actually being used as a single unit." *Hinton*, 219 F.2d at 326. Accord: *United States v. Higgins*, 428 F.2d 232 (7th Cir.1970), striking down a general warrant commanding a search of a basement apartment building where there was a three-story building with four apartments on each floor and three in the basement.

To search for evidence in a home demands the greatest of care and caution upon law enforcement; for, indeed, the intrusion of privacy into a home was the heart—the central focus—of the Fourth Amendment. Our forefathers feared the British violating the sanctity of their home. Hence, greater restraint is demanded in a home-setting which would include a family dwelling or building containing apartments. They feared officials pounding on their doors and breaking the door down to search and seize persons and property within their homes. They wanted to be secure from excesses of government. At the beginning, our forefathers declared that all men were born equally free and independent and had certain inalienable rights, among those being life, liberty, and the pursuit of happiness. Throughout modern history, people have fled to these shores because of the liberty that this Republic affords. They do not flee to the Communist bloc. This Republic is considered the leader of the free world among all nations. To us, they look for guidance and protection. The American Republic has made an indelible impact on this planet. It continues to be a beacon of liberty. Our forefathers, through the Bill of Rights, made it so. Therefore, each day, throughout the land, we must imbue that Bill of Rights with vitality. I cannot vote for an opinion which deprives a citizen of one of his most basic rights. Conceptually, to vote for an opinion which tolerates a search of an apartment house, albeit a little house on the prairie, without designating the spe-

cific apartment to be searched is to lay waste to the very protection which is sought by the Fourth Amendment of the United States Constitution and Article VI, § 11 of the South Dakota Constitution.*

Therefore, I respectfully dissent. Walking the solitary road of dissent again, I am comforted by these words: "The curious man—the dissenter—the innovator—the one who taunts and teases or makes a caricature of our prejudices, is often our salvation. Yet, throughout history he has been burned or booed, hanged or exiled, imprisoned or tortured, for pricking the bubble of contemporary dogma." Justice William O. Douglas. 59 Neb.L.Rev. 229, 230 (1980). Dissenters to British colonial rule wrote the Constitution; these dissenters, our Founding Fathers, feared a pernicious warrant, yes, such as we witness here.

---

* Article VI, § 11 of the South Dakota Constitution provides:

*The right of the people to be secure in their* persons, *houses,* papers and effects, *against unreasonable searches* and seizures *shall not be violated,* and no warrant shall issue but upon probable cause supported by affidavit, particularly describing the place to be searched and the person or thing to be seized. (Emphasis supplied.)